## 21836. CREWS *v.* THE STATE.

Decided January 12, 1932.

*Mingledorff & Gibson, Blalock & Blalock,* for plaintiff in error.

*A. B. Spence, solicitor-general, A. S. McQueen,* contra.

LUKE, J.  The special presentment in this case charges J. Melton Crews with the offense of murder, in that, on February 15, 1931, in Charlton county, Ga., he did kill Layton Hendricks by shooting him with a shotgun.  A jury found the defendant guilty of voluntary manslaughter, and he excepts to the judgment overruling his motion for a new trial.

It appears from the record, without dispute, that the defendant and his wife, Mrs. Lydia Crews, resided approximately one hundred and twenty-five feet from the house in which Layton Hendricks and his wife lived; that both Hendricks and his wife worked for them and lived in a house belonging to Mrs. Crews; that at about ten o'clock on the night of February 8, 1931, the defendant saw some one on the porch of the Hendricks home trying to enter the house by cutting through a screen in a window; that the defendant ordered this person to stop, but he did not do so, and "dashed" away; that the fugitive had run about ten feet when the defendant shot directly at him with a single-barrel shotgun loaded with buckshot, striking the victim just below the knee with twelve shot, some of which went through the leg, shattering the bones of the leg; that when the wound was examined and cleansed in the hospital about three hours after the shooting, "his pulse was around 130, which indicated profound shock and loss of blood;" that the best and, probably, only chance the wounded man had was to have his leg promptly amputated, but that he positively refused to allow such an operation; that shortly after the infliction of the wound, infection set in; and that the patient died in the hospital shortly after an operation was performed on his leg on March 2, 1931.  The man who was shot was Layton Hendricks.

The State adduced evidence to the effect that a short while before the shooting Layton Hendricks and the defendant had had a dispute and were not on good terms; that the defendant could, and did, recognize Hendricks, and knew perfectly well that Hendricks was the man he was shooting at; and that the shooting was intentional. On the other hand, the jury might have concluded, from the defendant's statement and evidence, that he and Hendricks were on

perfectly good terms at the time the shooting occurred; that two negroes were seen near the Hendricks home shortly before the shooting, and Mrs. Hendricks had asked protection from the defendant; that the defendant got his gun and went out to see what the trouble was; that he saw some one apparently trying to break into the Hendricks home, and ordered him to halt; that when the person ran the defendant shot; that the defendant had not the slightest idea that Hendricks was the man he was shooting at; and that he would not have shot Hendricks under any consideration if he had know who he was. In addition to the contention indicated by the foregoing statement, the defendant insists that the shooting was not the proximate cause of Hendricks' death. As explanatory of Hendricks' apparently strange conduct in attempting to break into his own house, the State adduced evidence to the effect that the house was locked and he intended to get in the window and get his coat.

We have given only a brief and somewhat general statement of the facts of the case and the contentions of the parties. A careful examination of the voluminous brief of evidence, however, conclusively shows that the verdict is supported by the evidence, and that there is no merit in the general grounds of the motion for a new trial.

■ Special ground 1 avers that the court erred in refusing to sustain a challenge to a juror who was on the regular panel, but who was on duty as special bailiff "in and about the courtroom, under the direction of the sheriff, at the time he was put upon the defendant as a juror, . . and the defendant was forced to strike said juror, and thus lose a strike." It not appearing from the ground that the movant exhausted his strikes, or that he was injured by the court's ruling, the ruling is no cause for a new trial. *Ethridge* v. *Stale,* 163 *Ga.* 186 (1-*b*) (136 S. E. 72). Indeed, while the ground is silent as to that question, it does appear from brief of counsel that the movant did not exhaust his strikes.

■ Special ground 2 avers that the court erred in allowing the witness O. M. Hires to testify to an alleged dying declaration of Hendricks, over the objection that the proper foundation for its introduction had not been laid. The declaration was made at the hospital, shortly before Hendricks was finally operated upon, in response to questions of the solicitor-general, propounded to Hen-

dricks in the presence of the witness O. M. Hires. Having already indicated the seriousness of the wound at the time it was inflicted, and that it had quickly become infected, we will only state here that the evidence shows that the wounded man's condition had grown steadily worse, and that when he made the statement under consideration his chance of recovery was very remote indeed. It appears from this ground that the witness Hires testified in part as follows before the dying declaration was allowed in evidence: "Mr. Spence, the solicitor, was with me. . . You [solicitor Spence] asked him about his condition, and he said he was in awful bad shape. You said to him. . . 'How bad off do you think you are?' He says: 'Well, I am in awful bad shape. . . I made a change night before last for the worse, and my condition is awful bad.' At that point you [solicitor Spence] asked him, did he realize that he was in a serious condition, and he said he did. You asked him, did he think he would recover, and he said he didn't think he would recover. . . He looked like he was drawing his breath a little bit at a time; . . he said he was in bad shape, and Mr. Spence asked him, did he realize that his condition was serious, and he said that he did, and that he had no hopes of recovery; . . further on he told about his leg. . . This was on Sunday night prior to the time the man was operated on. He mentioned the operation, and said, 'They say they are going to take my leg off to-morrow'."

"That declarations offered in evidence as dying declarations were made under the belief that the wound was mortal and death impending may be inferred from the nature of the wound, and other circumstances, though nothing direct was said respecting death or danger. The court must judge of the preliminary evidence, in the first instance, and, deeming it prima facie sufficient, should admit the declarations to the jury, instructing the jury afterwards to pass finally for themselves on the question whether or not the declarations were conscious utterances in the apprehension and immediate prospect of death." *Dumas* v. *State*, 62 *Ga.* 58 (2). The precise language quoted above has been adopted in *Duren* v. *State*, 158 *Ga.* 735 (2) (124 S. E. 343), and in *Morrow* v. *State*, 168 *Ga.* 575 (2) (148 S. E. 500), and in numerous other decisions by the courts of this State. In *Johnson* v. *State*, 169 *Ga.* 814 (152 S. E. 76), the court lays down suc-

cinctly some of the rules relating to dying declarations as follows: "3. To render admissible dying declarations as to the cause of his death and the person who killed him, they must be made by the declarant in the article of death, and he must be conscious of his condition. (*a*) Consciousness on the part of the deceased that he was dying and was in extremis may be inferred, not only from his statements, but also from the nature of the wound and other circumstances. (*b*) The actual period of survival after making the declaration is not controlling. The question does not depend upon the length of time between the declaration and the death of the declarant, but upon the declarant's mind at the time of the declaration, and his belief that he is in a dying condition. (*c*) A prima facie case that deceased was in extremis and is conscious thereof is sufficient to admit dying declarations to the jury."

Measuring the facts of the case at bar by the well-established rules of law, we are well satisfied that the State made out a prima facie case that Layton Hendricks was in extremis and conscious of his condition at the time he made his said statement. Therefore we hold that this ground does not show reversible error.

■ Special ground 3 complains that the court erred in refusing to allow the witness Alvah Bostick to testify on cross-examination that "the defendant and his wife had suffered losses by burglary prior to said night, . . for the purpose of showing the reason impelling the conduct of the defendant . . in making searches around his property and endeavoring to protect same against what a reasonable man would have supposed to be a burglar." Certainly the court did not err in excluding evidence that at some indefinite time in the past a burglary had been committed at the defendant's house.

■ Special ground 4 avers that the court erred in refusing to allow the witness Frank Phillips to testify in effect that Hendricks had stated about four days prior to the shooting that he was on perfectly good terms with the defendant and the latter's wife, but that his own wife had "bawled him out" so much about other women that he was going to "get drunk, raise hell, and bust Race Pond wide open, and go to South America or somewhere else." Movant contends that this testimony illustrated the conduct of the deceased on the night of the shooting, and tended to contradict the

statement in Hendricks' dying declaration that "he was trying to get in his house and get his coat because it was chilly." This ground discloses no cause for reversal.

■ It is averred in special ground 5 that the court erred in refusing to permit the witness Charlie Wright to testify that "in the presence of the deceased, thirty-five minutes after the shooting, while the deceased was still on the ground at the scene," the defendant stated that he "shot the deceased thinking he was a burglar, and not knowing who it was, and that he wouldn't have shot him for anything if he had known who it was," and that the deceased heard this statement and remained silent at the time, but later said, "When the time comes I will tell the whole thing."

It is contended by movant that "the statement of the defendant was made under such circumstances that the deceased was bound to answer and deny the statement as untrue," and that his failure so to do was in the nature of an admission that the defendant's statement was true. In the first place, we do not think that Hendricks, who was at the time lying desperately wounded and suffering on the ground, was called upon to say more than he did under the circumstances; and, in the second place, we are of the opinion that the statement of the defendant was in the nature of a self-serving declaration. See *Lyles* v. *State,* 130 *Ga.* 294 (3) (60 S. E. 578); *Carswell* v. *State,* 10 *Ga. App.* 30 (72 S. E. 602). It appears from this ground that the defendant made the statement in reply to questions asked him by Wright, who was an officer and an investigator, and there is nothing to show that the transaction was a part of the res gestæ. There is no merit in this ground.

■ The substance of special ground 6 is that the court erred in refusing to permit the witness Eston Ricketson to testify that, very shortly after the shooting, he met the defendant a short distance from the scene of the tragedy, and the defendant stated that "he thought the deceased was a burglar when he shot." This statement appears to have been nothing more than a self-serving declaration.

■ It appears from ground 7 that the movant offered in evidence a long affidavit of Alvah Bostick, who was with Hendricks when he was shot, which affidavit was made to be used by the movant upon an application for bail, and purported to cover prac-

tically the entire transaction. The court's ruling was as follows: "I rule out all of that relative to his wife. Any statement he made as to any disagreement or any trouble he had with his wife, I rule out on the ground that it is irrelevant, but the rest of the affidavit I will admit." This ruling was not erroneous.

■ In ground 8 it is averred that the court erred in charging the jury as follows: "The defendant in this case contends that he is not guilty. He contends that he shot the deceased, but that he shot him at a time when he did not know who he was, and that he thought that he was someone else; and he contends that he shot him to prevent him from committing a burglary. . . The defendant further contends that the deceased did not die as a result of the shot which he fired; that is, that the shot was not the primary and proximate cause of his death. He contends that death was produced from other causes. These are substantially the contentions of the defendant in this case. For any other contentions that the defendant may have made you will look to the evidence and the defendant's statement for a complete statement of his contentions."

The criticism of the foregoing instructions is that they in effect instructed the jury that the defendant contended that the deceased was actually committing a burglary, whereas the defendant "contended that the deceased was acting in such manner at the time as to cause a reasonable man, under the circumstances then existing, to think he was a burglar, and that the defendant fired the shot under that misapprehension, and that the legal responsibility for his act is the same as if deceased had in fact been a burglar actually engaged in the perpetration of the burglary at the time and place." We do not think that the court's charge discloses reversible error for the reason assigned.

■ It is contended in ground 9 that the court erred in charging the jury as follows: "The court charges you, on a prosecution for murder or manslaughter the accused would not be relieved of the responsibility for the death of the deceased because of negligence in the treatment of a mortal wound, or of unskilled treatment of a wound which was not necessarily mortal, if you find the wound was the primary cause which produced other and secondary causes from which the death of the deceased resulted. It is not sufficient defense in law to show that the wound was treated im-

properly by a doctor, and that if it had been properly treated the deceased might have recovered. If you find the defendant inflicted a wound on the deceased under circumstances to render him criminally liable for some grade of offense for the death of the deceased, he would be guilty of homicide, though you may find that the person wounded may have died from other causes, or would not have died from this one had not other causes operated with it, provided the wound really contributed, mediately or immediately, to the death in a degree sufficient for the law to notice." "If, however, you find that the wound was not mortal, and that death resulted solely from neglect or improper treatment, or from other causes, then the defendant would not be liable, and you should find him not guilty. If you should determine in this case that the evidence and the facts and circumstances of the case show that the deceased died from other causes, and the primary and proximate cause of his death resulted from causes other than the shooting, you should find him not guilty of the offense charged in the bill of indictment. In the event you should determine that he died from other causes, and that the other causes were the primary and proximate cause of his death other than the shooting, then you would be authorized to go further and determine whether or not the defendant is guilty of the offense of assault with intent to murder, under the rules of law which I have given you in charge, and which I will hereafter give you in charge."

The only criticism of the charge may be gathered from the following statement of counsel in this ground: "Under the charge as given by the court, the jury could have found that if a wound caused the deceased to take any other steps, or go any place else, or do anything else, and that as a result of such action on the part of the deceased he came to his death, the defendant would be liable." Obviously, the charge is not subject to the foregoing criticism. The key to the charge is in the first paragraph of the excerpt quoted, and that paragraph is substantially the charge in *Downing* v. *State,* 114 *Ga.* 30 (2) (39 S. E. 927). In that case, Chief Justice Simmons, speaking for a unanimous court, said in reference to the charge: "The principle therein announced is as old as the year-books, and, so far as we know, has never before been questioned in this State." The *Downing* case has been consistently followed. See *Allen* v. *State,* 133 *Ga.* 260

(65 S. E. 431) ; *Perdue* v. *State,* 135 *Ga.* 277 (3) (69 S. E. 184) ; *Clements* v. *State,* 141 *Ga.* 667 (81 S. E. 1117).

■ Ground 10, complaining that "the court erred in giving the charge set forth in the ground next above to the jury, because the same was erroneous and not sound as an abstract principle of law," is obviously not complete, in that it can not be considered without making reference to the preceding ground. However, it is not meritorious any way. See authorities cited in ground 9.

■ We come next to consider the charge complained of in ground 11. After instructing the jury that burglary was a felony, and defining burglary, the court charged the jury as follows : "If you believe in this case that at the time that the defendant shot the deceased that the deceased was undertaking to commit a felony, and that the defendant did not know who the deceased was, and that he shot the deceased thinking that he was a burglar, and that he was undertaking to commit a felony, and that he shot the deceased under the fears of a reasonable, courageous man, believing in good faith that he was undertaking to commit a felony, then I charge you that the defendant would not be guilty, and you should so find. I charge you further . . that the commission of a misdemeanor would not authorize any person who is undertaking to arrest a person, whether he be an officer or a private citizen, whether he have a warrant or not have a warrant, would not authorize him to kill the person in order to effect the arrest if he is undertaking to commit a misdemeanor. The question of whether or not the deceased was undertaking to commit a felony, and the question of whether or not the defendant acted in good faith, under the fears of a reasonable man, and did not know the deceased at the time that he fired the shot at him, these are questions of fact for the jury to determine from the evidence and facts and circumstances of the case and from the defendant's statement."

The criticism of the foregoing charge may perhaps be best understood from the following statement in this ground : "Under this charge, in order for the defendant to prove his innocence, it would be necessary to show that the deceased was actually undertaking to commit a felony at the time he was shot, whereas the defendant admitted that such was not the fact, and his whole defense as to this issue was based upon the contention that the

deceased's conduct was such as would lead a reasonable man to conclude that deceased was a burglar under the existing circumstances at the time." It is further contended in the ground that, "under the admissions made by the defendant [i. e., that the deceased, in trying to enter his own residence, was not actually undertaking to commit a felony], the charge of the court . . was equivalent to directing the jury to bring in a verdict of guilty in some degree against the defendant." The movant did not request any other or further instructions than those given, and we hold that the judgment should not be reversed for any reason assigned in ground 11.

■ It is contended in ground 12 that the judge erred in that, after charging the law applicable to the arrest of a person undertaking to commit a misdemeanor as set out in our discussion of the previous ground, he did not instruct the jury more fully upon that subject, and did not "charge the law with reference to the arrest of a felon." We hold that this ground presents no valid reason for reversing the judgment.

■ Ground 13 seeks a reversal "because the court failed to charge at all upon one of the vital and substantive issues made by the contentions of the defendant and by the evidence, in that the court did not anywhere charge the law with reference to the right of an officer or private citizen to arrest one who has committed or is attempting to commit a felony in his presence." This ground further recites that "it was the contention of the defendant that the deceased was acting in such way as to cause a reasonable man to think that he was actually engaged in the commission of a felony at the time that the deceased ran off in the darkness when the defendant saw him and called him to stop. . ." The nature of this last ground is sufficiently indicated by the foregoing quotations from it. As may have been gathered from what has been said in reference to some of the grounds hereinbefore decided, we are of the opinion that, in the absence of any request for other and fuller instructions as to the contentions of the accused and the law of the case, this ground shows no cause for reversing the judgment.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*