## 50883. MEADOWS v. THE STATE.

WEBB, Judge.

Melvin Meadows was convicted of two counts of aggravated assault, and he contends here that the trial court erred in overruling his "objection to the lack of a proper chain of custody being established by the State in relation to a latent fingerprint card, allegedly bearing the fingerprints of the appellant."

At trial Officer Frazier of the Rome Police Department testified that he "lifted" fingerprint impressions from the door handle of the automobile belonging to the victim Brown at the scene of one of the shootings. He further testified that he placed the impressions on a regulation fingerprint card and turned the card over to Detective Crabbe. Detective Crabbe testified that this latent fingerprint card, as well as a comparison card containing defendant's inked fingerprint impressions, was retained in a filing cabinet in the identification room of the police department for safekeeping and then turned over by Crabbe to Officer Barnette for delivery to the crime information center. Barnette testified that he received the cards from Crabbe and delivered them to the center, and Larry Hankerson of the center testified that he received the cards from Barnette and performed the comparisons. Crabbe also testified that neither fingerprint card had been altered.

Defendant objected to this comparison and identification testimony on the grounds that "testimony had been introduced that [the latent fingerprint card] was in an open file for a period of time there in the police department, that such file was available to any detective working in that department. And I do not believe that a proper chain of custody has been established by the State." The objection was overruled, and the correctness of that ruling is before us for review. *Held:*

We affirm. It is obvious that there is no gap in the chain of custody. What defendant seeks is that the state, in order to render the evidence admissible, be required to negate all possibilities of tampering or error while the card was in the filing cabinet. This is not the law. In *Patterson v. State,* 224 Ga. 197, 199 (160 SE2d 815),

defendant's blood sample was left over the weekend in a refrigerator to which approximately eight persons had access. In holding the result of the blood test admissible, the Supreme Court stated: "The evidence shows that the blood sample was handled in the normal course of testing and there is nothing in the record that creates a suspicion that the blood tested was other than that taken from the defendant. The identity of such blood samples need not be proved beyond all possibility of doubt or that all possibility of tampering with them be excluded. The circumstances need only establish reasonable assurance of the identity of the sample."

In *Interstate Life &c. Co. v. Whitlock,* 112 Ga. App. 212, 224 (144 SE2d 532), another blood sample case, we held that no rigid rule could be applied and quoted approvingly from Eisentrager v. State, 79 Nev. 38 (5, 6) (378 P2d 526): " 'The burden is upon the party relying upon expert testimony to prove the identity of the object upon which such testimony is based. *However, the practicalities of proof do not require such party to negative all possibility of substitution or tampering. He need only to establish that it is reasonably certain that substitution, alteration, or tampering did not occur* . . . In such circumstances it was proper for the trial judge to admit the evidence *and let what doubt, if any, regarding its identity, go to its weight.'* "

People v. Riser, 47 Cal. 2d 566 (305 P2d 1, 9-10) dealt with a situation where the subject of the testimony was, as here, fingerprints. In that case a deputy sheriff dusted bottles, glasses, etc. for the existence of fingerprints at the scene and later put the glass articles in an open bookcase in an office to which others had access. Defendant contended "that in view of these facts the prosecution failed to establish continuous possession, which is a necessary foundation for the admission of demonstrative evidence; that since someone could have altered the prints or imposed wholly new ones during the four hours the glass and bottle were left unguarded in the bookcase, the prosecution has not sufficiently identified the prints as those that existed when the articles were removed from the bar. Defendant would require the prosecution to negative all possibility of tampering." The court held,

however, that it is not necessary that the state negative all possibility of tampering but only that it show it is reasonably certain there was no alteration — when there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to its weight. Accord, Childress v. State, 472 SW2d 133 (1) (Tex. Crim. App.). See also State v. Shore, 20 N.C. App. 510 (201 SE2d 701, 703 (4)). In the instant case we have the additional evidence of Officer Crabbe that there was no alteration.

It should also be noted that a chain of custody question is not involved where distinct and recognizable objects are identified. *Starks v. State,* 113 Ga. App. 780 (1) (149 SE2d 841); *Lord v. State,* 134 Ga. App. 683, 684 (2) (215 SE2d 493). Although we find it unnecessary to reach the point here, other courts have held this principle applicable to fingerprint evidence. State v. Brady, 2 Ariz. App. 210 (407 P2d 399, 401 (1, 2)); State v. Walker, 263 La. 67 (267 S2d 197).

*Judgment affirmed. Bell, C. J., and Marshall, J., concur.*

SUBMITTED JUNE 17, 1975 — DECIDED SEPTEMBER 19, 1975.

*Robert J. Evans,* for appellant.

*F. Larry Salmon, District Attorney, Robert D. Engelhart, Assistant District Attorney,* for appellee.