## 51313. CAMPBELL v. THE STATE.

ARGUED SEPTEMBER 30, 1975 — DECIDED OCTOBER 9, 1975 — REHEARING DENIED OCTOBER 24, 1975 —

*Greene, Smith & Traver, H. Darrell Greene, Morgan McNeel Robertson,* for appellant.

*Paul W. Carden, Solicitor, Herbert Rivers, Assistant Solicitor,* for appellee.

DEEN, Presiding Judge.

1. Appellant contends in his first enumeration of error that his motion for directed verdict should properly have been granted because the arresting officer was not qualified under Code Ann. § 92A-2108. Code Ann. § 92A-2115 makes "any proceeding under" an arrest by unqualified officers null and void. We have considered and rejected this same argument in *Rogers v. State,* 133 Ga. App. 513 (211 SE2d 373), wherein it was held: "The indictment, trial, and conviction of the defendants was not a 'proceeding under' an arrest. . . . It is inconceivable to us that the legislature intended to absolve a man of all guilt of a crime charged merely because his arrest was illegal, as contended by the appellant, and we will not so hold." Appellant urges us to "reconsider" our original position in *Rogers.* Our position was reconsidered in *Hunt v. State,* 134 Ga. App. 761 (216 SE2d 354). We find nothing in appellant's argument to persuade us that *Rogers* and *Hunt* were decided wrongly and hereby reaffirm their holdings.

2. Appellant urges error was committed when the court refused to strike the testimony of the witness who drew his blood for tests. Under Code Ann. § 68A-902.1 (a) (2) only a physician, registered nurse or other qualified person may withdraw blood for the purpose of determining alcohol content. Since there was no showing of the witness' qualifications as a registered nurse under Code Ann. § 84-1008, appellant argues that the state failed to carry its burden of proving the witness was qualified to draw blood. The record reveals that the witness testified that she was a registered nurse, went to school in New York, had worked in Cobb General Hospital for two and one-half years and had given approximately one hundred blood tests during her tenure as a registered nurse. She was never cross examined about her qualifications. The witness testified under oath that she was a registered nurse and gave statements as

to her experience; there was no evidence to the contrary. Code Ann. § 38-121 provides in part: "The testimony of a single witness is generally sufficient to establish a fact." We conclude that the facts as presented qualify the witness as a registered nurse or a qualified person for the withdrawal of blood under Code Ann. § 68A-902.1 (a) (2).

3. Appellant's third enumeration of error goes to the admission into evidence of blood test results showing him to have been intoxicated at the time of the accident. It is urged that there was an insufficient chain of custody established and that in its "desultory peregrinations" the specimen may have been misplaced, lost or substituted. "When a test has been performed on an item of alleged evidence linking a defendant to a crime, there are at least three considerations involved in the identification of the item: (1) Is it properly identified as having actually come from the defendant? (2) is it properly identified as the item actually tested? (3) where the item is one of a class of fungible items, e. g. blood samples, is an adequate chain of custody presented to preserve its identity?" *Terry v. State,* 130 Ga. App. 655, 656 (204 SE2d 372). In *Pittman v. State,* 110 Ga. App. 625 (139 SE2d 507) it was held that where the evidence does not show the following, a blood analysis is properly excluded: by whom the sample was taken; how the container was labeled; by whom or by what means it was transmitted to the laboratory; when and by whom it was received. In the case sub judice the evidence shows that the blood sample was taken by a registered nurse in the presence of the arresting officer; the blood sample was placed in a prepared container, along with the appellant's signed consent form, and properly addressed to the State Crime Lab; the container was sent by the arresting officer through the mail to the State Crime Lab; the container and sealed specimens arrived five days later and were received by the drug analyst who eventually conducted the tests. We believe this to satisfy the first two elements of identification as presented in *Terry.* The thrust of appellant's argument goes to the chain of custody of the samples *after* they reached the state laboratory. The testimony in this regard was that the sealed container was delivered to a basket in a hallway, removed by the state analyst, opened

and the specimens removed, presented to a secretary who typed up an information sheet and then relinquished control over them to the analyst who in turn deposited them in a refrigerator for later testing. " 'No evidence was offered by the defense suggesting any laxity in the custodial or laboratory procedures of the Government, or any reason why the exhibits should be regarded as in any way untrustworthy. . .' 'The burden is upon the party relying upon expert testimony to prove the identity of the object upon which such testimony is based. *However, the practicalities of proof do not require such party to negative all possibility of substitution or tampering. He need only to establish that it is reasonably certain that substitution, alteration or tampering did not occur* . . . In such circumstances it was proper for the trial judge to admit the evidence *and let what doubt, if any, regarding its identity, go to its weight.'* " *Interstate Life & Accident Ins. Co. v. Whitlock,* 112 Ga. App. 212, 224 (144 SE2d 532). "Factors to be considered in making a determination of whether physical objects connected with commission of a crime are substantially in the same condition as when the crime was committed, so that they can be admitted into evidence, [are] the nature of the article, cir-cumstances surrounding its preservation and custody, and the likelihood of intermeddlers tampering with it. If upon consideration of such factors the trial judge is satisfied that in reasonable probability, the article has not been changed in important respects, he may permit its introduction into evidence." *Epps v. State,* 134 Ga. App. 429, 433 (214 SE2d 703). In light of the sealed nature of the container and the lack of any evidence of tampering, we are convinced that the chain of custody is unbroken up to its opening by the state analyst and the typing of the information sheet by her secretary. The evidence thereafter shows nothing but a routine "peregrination" of the samples through the steps of chemical analysis without any showing by the appellant of other than standard operational procedure by the state lab and its operatives. "Where no evidence indicating otherwise is produced, the presumption of regularity supports the official acts of public officers, and the courts presume that they have properly discharged their official

duty. Pasadena Research Laboratories v. United States, 169 F2d 375, 381." *Epps v. State,* 134 Ga. App. 434, supra. The chain of custody is unbroken.

4. The appellant contends that it was error for the trial court to allow the doctor who performed the autopsy to be asked if the cause of death was consistent with an injury that occurred in an automobile wreck when there had been no other evidence as yet presented about the accident itself or of the injury received by the deceased. The record reveals that the state sought and obtained the court's permission to call the witness out of order and promised to lay the foundation later and to connect up the doctor's testimony at that time. "Where the court rules provisionally, or subject to future evidence, or reserves a ruling until other evidence is in, the objection must be renewed." *Griffin v. State,* 133 Ga. App. 508, 509 (211 SE2d 382). Since appellant's objection was never renewed, enumeration of error number 4 is without merit.

5. Appellant argues that it was error to overrule his motion for directed verdict of acquittal because the "overwhelming weight of the evidence" sustains the finding of an independent intervening cause as the cause of death. What the evidence shows is that the deceased received injuries in a car accident and died some 17 days later, not having had any other mishap in the interval between being struck by the appellant's car and his demise. There was expert testimony to the effect that certain injuries sustained by the deceased, if they had been diagnosed by a physician and if they could have been treated, might not have resulted in death. However, the same expert also testified: "Assuming that he received no other injuries during that space of time, the cause of death would in all medical probability be the result of the trauma from that automobile accident you described." Even assuming the decedent was improperly treated by his physicians, this provides no defense to appellant. "It is not sufficient defense in law to show that the wound was treated improperly by a doctor, and that if it had been properly treated the deceased might have re- covered." *Crews v. State,* 44 Ga. App. 546, 552 (162 SE 146); *Downing v. State,* 114 Ga. 30 (2) (39 SE 927); *Allen*

*v. State,* 133 Ga. 260 (65 SE 431); *Perdue v. State,* 135 Ga. 277 (3) (69 SE 184); *Clements v. State,* 141 Ga. 667 (81 SE 1117). The evidence did not demand a verdict of acquittal and it was not error to refuse to direct such a verdict in favor of appellant. Code Ann. § 27-1802; *McKenzey v. State,* 125 Ga. App. 508 (188 SE2d 116).

6. Error is assigned to the trial judge's failure to give the following charge: "If, however, you find that the wound was not mortal, and that death resulted solely from neglect or improper treatment, or from other causes, then the defendant would not be liable, and you should find him not guilty. If you should determine in this case that the evidence and the facts and circumstances of the case show that the deceased died from other causes, and the primary and proximate cause of his death resulted from causes other than the [injuries received in the automobile accident], you should find him not guilty . . .' " *Crews v. State,* 44 Ga. App. 546, 553, supra. This charge was not requested by appellant but the law is clear that it is the duty of the court to charge the jury with the law applicable to the substantial issues involved, with or without request. *American Family Life Ins. Co. v. Glenn,* 109 Ga. App. 122 (135 SE2d 442). However the trial judge must charge on all the law only with regard to subjects which are material or applicable. As noted, improper treatment of a wound by a physician is not a defense and does not relieve the perpetrator from criminal liability. The cases make it clear that what is necessary to cut off criminal responsibility and serve as an independent intervening cause is clear proof that the treatment of a non-mortal wound, and not the injury itself, is the proximate cause of death. "But if the wound or hurt be not mortal, but with ill applications by the party, or those about him, of unwholesome salves or medicines the party dies, if it can clearly appear that this medicine, and not the wound, was the cause of his death, it seems it is not homicide, but then that must appear clearly and certainly to be so." *Clements v. State,* 141 Ga. 667, 669, supra. "[B]ut if the deceased had failed to receive skilled treatment of the wound which was the primary cause that produced other and secondary causes from which the death resulted, the accused would not be relieved of the

responsibility for the death of the deceased." *Weaver v. State,* 200 Ga. 598, 607 (37 SE2d 802). This legal precept is most succinctly stated in *Clements v. State,* 141 Ga. 667, 669, supra: *"If the death be owing to the wound,* it signifies nothing that the decedent would have recovered under more favorable circumstances or with more prudent care." (Emphasis supplied.) Here the evidence was uncontroverted that the deceased died from a wound inflicted in the automobile accident; the appellant was responsible for the infliction of these wounds and it is his theory that under "more favorable circumstances or with more prudent care" these wounds might not have proved fatal. It is not argued and there is no evidence to show that the treatment of the wounds involved some intervening agency such as "unwholesome salves or medicines" which was the affirmative cause of death; rather it is alleged that if diagnosed and if treated, death might not have resulted. Here all the evidence was that the death resulted from the wounds inflicted in the car accident; since appellant is responsible for those wounds he is likewise liable for the resulting death irrespective of whether or not better medical treatment might have prevented it. The evidence not warranting the charge on death from improper treatment, it was not error for the trial judge to fail to give it.

*Judgment affirmed. Evans and Stolz, JJ., concur.*