54830. WILLIAMS v. THE STATE.

MCMURRAY, Judge.
Defendant, while driving an automobile with a passenger therein, was involved in a collision in which the automobile left the road and ran into a culvert. The passenger and two dogs also in the car were killed. Defendant was carried to the hospital and approximately two hours after the incident a state patrolman went to the hospital and requested a blood sample to determine his blood alcohol content. The state patrolman read the implied consent law to him and the blood sample was taken even though there is no conclusive evidence that he consented to same, since "[h]e was moaning and groaning

and he never talked to me after that." Defendant was indicted and convicted for the offenses of homicide by vehicle while under the influence of alcohol and driving with a revoked license. He was sentenced to serve three years in the state penitentiary for the offense of homicide by vehicle and 12 months confinement as to the other charge "to run concurrent" with it. Motion for new trial as amended was filed and denied, and defendant appeals. *Held:*

1. Defendant admitted he was driving the automobile and the evidence is conclusive that the passenger died as a result of the collision of the automobile with the culvert. There was ample evidence that the defendant was under the influence of alcohol and his blood was shown to contain .20 grams percent ethyl alcohol, which is more than sufficient to authorize the jury's finding that the defendant was driving the automobile under the influence of alcohol. See *Herndon v. State,* 132 Ga. App. 747 (3) (209 SE2d 26); *Veasley v. State,* 142 Ga. App. 863 (1) (237 SE2d 464).

2. Defendant moved to suppress the evidence with reference to the blood alcohol test, his blood having been taken while he was in a semi-conscious condition. He also properly objected to the evidence when it was presented during the trial. He first contends that he was not under technical arrest at that time. But there was primarily probable cause for his arrest, and his liberty was restrained no matter how slight at the moment which would constitute an arrest. See *Clements v. State,* 226 Ga. 66 (2) (172 SE2d 600); *Strong v. State,* 231 Ga. 514, 518 (202 SE2d 428).

Further, even though defendant contends he was forced to give evidence that was self-incriminating in violation of the Fifth Amendment of the United States Constitution in that he did not give his consent, actual or implied, to the taking of the blood, this exact issue has been ruled upon with reference to the taking of the blood as not being other than a minor intrusion upon his body so as not to cause the person to be a witness against himself within the meaning of the Fifth Amendment protection. See Schmerber v. California, 384 U. S. 757 (86 SC 186, 16 LE2d 908); *Strong v. State,* 231 Ga. 514, 518, supra.

Regardless of the fact that defendant was in a semi-conscious condition and did not give his consent when the blood sample was taken, there is no merit in his constitutional attacks that his rights were violated and that the blood test should have been suppressed. See *Smith v. State,* 143 Ga. App. 347 (238 SE2d 698).

3. Defendant next contends that the blood sample which was taken two hours after the collision and carried to the patrol barracks and placed in a refrigerator with other samples on October 18, 1976, and was not carried to the State Crime Laboratory until November 15, 1976, should have been excluded is without merit inasmuch as there is no evidence that it was in any way tampered with during this period; the evidence shows it had been sealed and not unsealed until tested and positive testimony that no one had tampered with the sample, as well as expert opinion that under the above circumstances the alcoholic content would remain the same. A chain of custody pursuant to the requirements of *Pittman v. State,* 110 Ga. App. 625 (1) (139 SE2d 507), and *Abercrombie v. State,* 138 Ga. App. 536 (2) (226 SE2d 763), was sufficient to show a proper chain of custody here.

*Judgment affirmed. Bell, C. J., Quillian, P. J., Webb, Shulman, Banke, and Birdsong, JJ., concur. Deen, P. J., and Smith, J., dissent.*

SUBMITTED OCTOBER 31, 1977 — DECIDED FEBRUARY 28, 1978.

*Edge & Edge, Eugene F. Edge,* for appellant.
*Charles A. Pannell, Jr., District Attorney, Stephen A. Williams, W. Michael B. Stoddard, Assistant District Attorneys,* for appellee.

DEEN, Presiding Judge, dissenting.

I concur fully with the dissent written by Judge Smith and must acknowledge that we erred in *Smith v. State,* 143 Ga. App. 347 (238 SE2d 698) (1977). ". . . The doctrine of stare decisis should not be followed to the extent that error may be perpetuated." *Humthlett v. Reeves,* 211 Ga. 210, 215 (85 SE2d 25) (1954).

As stated by Justice Ingram in his dissent in *Strong*

*v. State,* 231 Ga. 514, 519 (202 SE2d 428)(1973), "The appellant did not even have the same right extended to a conscious person to take either a breath test or blood test or lose his driver's license." It should be noted in the majority view of this same opinion that even though the taking of the blood sample did not breach constitutional safeguards under Breithaupt v. Abrams, 352 U. S. 432 (77 SC 408, 1 LE2d 448); Schmerber v. California, 384 U. S. 757 (86 SC 1826, 16 LE2d 908), nonetheless the majority opinion held, "There remains for decision appellant's contention that the use of the results of the blood test against him at the trial required him to give evidence against himself."

It must be observed that in Schmerber and Breithaupt, supra, wherein the right to take blood samples was nonviolative of 4th, 5th and 14th Amendment rights, it does not appear that special statutory built-in optional "rights of privacy" existed in that state as evident in Georgia. Our statute provides the absolute option, choice and right to surrender and have suspended one's driver's license, as an alternative, rather than submit and subject to sudden bodily seizure, without court order or warrant, of "tainted" blood for later possible use as evidence in a criminal case. Georgia is the early pioneer in identifying fundamental, inherent and inalienable rights such as the "right of privacy." See *Pavesich v. New England Mut. &c. Ins. Co.,* 122 Ga. 190 (50 SE 68) (1905). Compare Griswold v. Connecticut, 381 U. S. 479 (85 SC 1678, 14 LE2d 510) (1965) which outlines sources of privacy rights within the penumbra of the 1st, 3rd, 4th, 5th, 9th and 14th Amendments, particularly the special concurrence by Justice Goldberg, concurred in by Chief Justice Warren and Justice Brennan, and dissents thereto relating to the double standard debates of penumbras-emanations approach vs. the natural, inherent and fundamental law and rights approach. Doe v. Bolton, 410 U. S. 179 (1973) and Roe v. Wade, 410 U. S. 113 (93 SC 705, 35 LE2d 147) (1973), the former a Georgia case and the latter a Texas case, involve somewhat similar points. The last case holds the privacy rights of the expectant mother, whether through 1st, 4th, 5th or 9th Amendments, outweighed the privacy rights, or potential

thereof, of the life of the fetus. The rights of the potential mother prevailed over the potential rights of the fetus, and the latter, as possibly millions of others, is denied equal protection of the laws and is labeled a nonperson, because it had not yet been born. However, where special statutory rights and alternatives are set forth by statute for *all persons,* in obtaining blood from the body, the unconscious (the weak), like the fetus, should have equal protection as to privacy alternatives, the same as the conscious (the strong), like the mother.

Even though the statutes discussed relate to the license to drive an automobile, which is a privilege, any nomenclature label or distinction must yield to the obvious conclusion the "tainted" blood obtained is de facto if not de jure utilized for later criminal proceedings in prosecuting the unconscious (the weak) in a criminal proceeding without the opportunity of making an intelligent and informed waiver of his statutory and constitutional inherent, fundamental, natural and inalienable rights, while, on the other hand, the conscious (the strong) has a superior and unequal right to absolutely surrender his license and insulate and protect himself from prosecution and criminal conviction.

Even in *Creamer v. State,* 229 Ga. 511 (192 SE2d 350) (1972), wherein it was held that it was not an unreasonable invasion of one's body to surgically remove a bullet from a defendant's body, a search warrant was required before proceeding with the operation, plus in this type situation there was no statutory option or alternative rule applying one method to a conscious person (the strong) and another discriminatory rule as to the unconscious (the weak).

Probing for a bullet or removing blood differs in degrees as to reasonableness and as to methodology of extraction, but whatever standards are finally adopted and proscribed must provide equal protection of the laws to all alike, particularly when penetrating the privacy of one's person. One should not have a strong superior right to control his body and retain his blood, while the weak, prostrate and helpless, who has no control over his body, does not have an equal right to retain his blood, or if taken, have a later opportunity to make an informed and intelli-

gent waiver or equal choice, as did the former.

SMITH, Judge, dissenting.

I would reverse.

Williams, while driving, was involved in a one-car accident in which a passenger was killed. A patrol officer directed a nurse to remove a sample of blood from Williams. Before removal of the blood sample, the officer read to Williams the implied consent law as provided by Georgia law. There is no evidence that Williams understood or knew when it was read to him. The evidence supports the fact that he never did consent and that his physical condition was such that he was incapable of consent.

Code § 68A-902.1(a) (Ga. L. 1974, pp. 633, 672), dealing with the giving of chemical tests, refers to Ga. L. 1968, pp. 448, 452 (Code Ann. § 68-1625.1) as the rule to follow in submitting to a blood test at the request of a law enforcement officer. There was no § 68-1625.1 in effect at the time of the alleged crime in this case, as this section was repealed by Ga. L. 1974, pp. 633, 691; and Ga. L. 1975, pp. 1008, 1045. This section was re-enacted by the legislature in Ga. L. 1975, pp. 1008, 1028 and codified as Code Ann. § 68B-306, by Ga. L. 1977, p. 1036, effective March 30, 1977, Code Ann. § 68-1625.1 was corrected to read Code § 68B-306.

In dealing with a similar situation, the Supreme Court stated in *Lamons v. Yarbrough,* 206 Ga. 50, 56 (55 SE2d 551) (1949), "[I]t is the duty of the court to arrive at the legislative intent, and that, in doing so, it should not adopt an arbitrary rule under which it must be held without variance. . .that the legislature intended to make a typographical or clerical error, the result of which would be to make nonsense of the Act, and not carry out the legislative scheme, but to destroy it." It is clear in this case that the legislature meant to carry forward into the new Act, the same provisions set forth in the repealed Act as it re-enacted the provisions of the old Act under a new section but failed to replace the old § 68-1625.1 with the new one, § 68B-306. However, in 1977, the clerical error was corrected by deleting the old section and inserting the new.

The matter of extracting blood from an unconscious person to determine the alcoholic content without his consent, is not a new one before this court.

In the case of *Smith v. State,* 143 Ga. App. 347 (238 SE2d 698) (1977), this court held that it was legal to do so. In arriving at this conclusion the *Smith* case held that it was the intent of the legislature "that, *under the exigent circumstances,* the officer *lawfully can extract a blood specimen* under the aegis of protection of evidence." (Emphasis supplied.) The case also held that § 68B-306(b) referred "only to relevant provisions of § 68A-902.1." It is not within the court's province to decide what is or is not relevant. When the legislature said "subject to the provisions of § 68A-902.1" that is what it meant, nothing more, nothing less; the court cannot construe otherwise.

This court in *Hulsey v. State,* 138 Ga. App. 221, 222 (225 SE2d 752) (1976), thusly answered the state's contention that it had substantially complied with the law: "This begs the question; substantial compliance with the provision as to additional tests does not compensate for the total failure to advise the defendant *at any time* of his right to a urine analysis." (Emphasis supplied.) The court in this case also pointed out that, even though a person is presumed to know the law, "where the statute itself provides that a person 'shall' be advised of his rights under the law, the legislature obviously meant to abrogate this presumption and replace it with the requirement that notice be given." This court has made it clear that the legislative intent as to *all* portions of § 68A-902.1 are relevant in every case involving chemical tests made thereunder and each provision set out therein is to be complied with in every detail. If the *Smith* case had given the unconscious man the right to object, when he regained consciousness, to the use of the blood specimen, then he would have been granted the same protection under the statute that the conscious man had. If he objected, then you would proceed against him as provided in § 68B-306 (c) and (d). To hold otherwise is an unconstitutional construction of this statute. Our courts have held over and over again that, "a statute must be so construed, if fairly possible, as to avoid not only the

conclusion that it is unconstitutional, but also grave doubts upon that score. [Cit.] The language of a statute must be given a *reasonable* construction; and where susceptible of *more than one meaning,* it should be interpreted consistently with the Constitution." *Forrester v. Culpepper,* 194 Ga. 744, 749 (22 SE2d 595) (1942). (Emphasis supplied.) *Smith,* supra, places an unconstitutional construction upon Code Ann. § 68B-306(b). Both § 68B-306 and § 68A-902.1 deal with a single class, that is persons driving under the influence of alcohol or drugs and the suspension of license for refusal to submit to chemical tests, as well as how specimens may be obtained and tested by law enforcement officers from all persons suspected of driving under the influence. Section 68B-306 (a), supra, deals with the conscious person; (b) deals with the unconscious person.

Courts are to interpret statutes only if they are ambiguous. This statute is not ambiguous. It must be noted that § 68B-306 (a) states how a conscious person must be dealt with *"subject to the provisions of § 68A-902.1,* [emphasis supplied] to a chemical test or tests of his blood, breath or urine or other bodily substances."

Section 68B-306(b) states how an unconscious person must be dealt with, stating, "shall be deemed not to have withdrawn the consent provided by paragraph (a) of this section and the test or tests may be administered, *subject to the provisions of § 68A-902.1."* (Emphasis supplied.)

The Georgia legislature has enacted a statute dealing with how tests may be given those suspected of driving under the influence. By statute, our legislature has given more protection to this class of people than our Constitution provides. This it can do our legislature has seen fit, by statute, to give this class of persons a statutory right of privacy which cannot be violated except by consent. There are no exceptions set forth in the statute. Generally speaking, the intention of the legislature is to be gathered from the statute as a whole rather than from a single-word, phrase or paragraph. Taking § 68A-902.1 and § 68B-306 and reading them together, which you must do to arrive at the legislative intent, you cannot find any hint of legislative intent that the police officer, or anyone else, could extract blood from an unconscious

person, without consent, "under the aegis of protection of evidence." Now the legislature did not say the consent must be obtained before or after taking the blood of the unconscious person, but, it did say consent must be obtained from both the conscious and unconscious person. In view of this, the sensible construction to be placed thereon, is that such consent must be obtained when the person regains consciousness. Therefore, take the blood while he is unconscious, and, when he regains consciousness, give him the option of consenting or refusing to allow the blood test to be used as evidence. In this way, all members of the class will have been granted equal protection and due process of the law.

I think, perhaps, the *Smith* case and the majority in this case overlooked the fact that the Georgia legislature saw fit, in its wisdom, to enact legislation regulating how people driving under the influence must be dealt with. The other jurisdictions dealing with this matter of obtaining blood from persons suspected of being under the influence did not have a statutory provision whereby they were directed to obtain consent before taking the blood sample.

It is obvious that both the conscious and unconscious person is of the same class covered by the statute, as (a) and (b) are inter-dependent. The consent in (b) is achieved by referring to (a), and both are subject to the provisions of § 68A-902.1. This section states, "Upon the trial of any civil or criminal action or proceeding . . . the following provisions shall apply." In *Nelson v. State,* 135 Ga. App. 212, 214 (217 SE2d 450) (1975), this court held that "the advice of the right in this statute is clearly connected to and affects the admissibility of the test results into evidence in a criminal proceeding. In the absence of the advice, the intoximeter test results are inadmissible." The court was dealing with § 68A-902.1 and made no distinction in what type criminal case evidence obtained by chemical tests was to be used, and neither does the statute, as it says "any civil or criminal action." Therefore, *all persons* under the influence of alcohol or drugs using a Georgia highway are to have equal protection and due process of the law as provided by these two statutes.

Therefore let us take a hypothetical case involving John Doe and Richard Roe. (Note: Richard Roe is Williams in our case.) Both men are driving separate cars on a Georgia highway. They have a head-on collision and a passenger is killed in each car. John Doe is conscious, Richard Roe is unconscious. A state trooper arrives on the scene, smells alcohol on both and proceeds under Code §§ 68A-902.1 and 68B-306, as to each, as follows:

*John Doe:* The officer proceeds *"subject to the provision of § 68A-902.1."* (Emphasis supplied.) He reads him the implied consent law and requests a breath, blood or urine test; John Doe refuses. Section 68B-306(c) states that, upon his refusal to submit to a test as provided in paragraph (a) of this section, none shall be given and his license suspended, *subject to review* as provided in this Title. Then (d) and (e) proceed to set out how the hearing will be conducted.

*Richard Roe:* The unconscious one is taken to the hospital. Section 68B-306(b) deals with him. This subsection refers to and depends upon (a) of § 68B-306, supra, for its implied consent power and states that the test or tests may be administered, *"subject to the provisions of section 68A-902.1."* (Emphasis supplied.) Subsection (a) (2) states, "when a person shall submit to a blood test *at the request of a law enforcement officer* under the provisions of section 68-1625.1 (68B-306) . . ." (Emphasis supplied.) This section plainly forbids the taking of blood without Richard Roe's consent. Because he is unconscious, Richard Roe cannot refuse or consent and is thereby deprived of the right that John Doe has, that is, the right to refuse and suffer only a revoked driving license after a hearing. There is *no* provision for Richard Roe to have a hearing of any kind upon the taking of his blood without his consent or knowledge. Reading the implied consent law to Richard Roe (Williams), who is unconscious, is comparable to reading a Chinaman his Miranda rights in English when he speaks only Chinese.

This court has strictly construed these statutes to the point that it has reversed convictions because the arresting officer failed to advise the arrested person that he had the right to have another qualified person of his

own choosing administer a chemical test in addition to the intoximeter test administered at the direction of the arresting officer. *Nelson v. State,* 135 Ga. App. 212, supra. The Supreme Court in *Garrett v. Dept. of Public Safety,* 237 Ga. 413 (228 SE2d 812) (1976), took this same position. Also, in *Torley v. State,* 141 Ga. App. 366 (233 SE2d 476) (1977), this court stated the arresting officer at the time of the arrest must advise the person arrested of his rights to an independent test other than the intoximeter test he is giving, even when he consents to a breath test.

It can be seen by these holdings that the statute has been strictly construed. Therefore, this court should not stray from a strict construction to a construction that is incompatible with the constitutionality of the statute. To follow the *Smith* case, supra, is to place a construction upon this statute whereby in our hypothetical case, Richard Roe would be denied equal protection and due process of the law under the Fourteenth Amendment of the United States Constitution (Code § 1-815) and the Constitution of Georgia (Code Ann. §§ 2-102 and 2-103). The cases have held over and over again that, "it is only in cases where laws are applied differently to different persons under the same or similar circumstances that the equal protection of the law is denied." *Buchanan v. State,* 215 Ga. 791, 792 (113 SE2d 609) (1960). See *Chatterton v. Dutton,* 223 Ga. 243, 245 (154 SE2d 213) (1967) in which the court said, "the guaranty of equal protection of the laws requires that all persons shall be treated alike under like circumstances and conditions, both in privileges conferred and in liabilities imposed." Finally on the question of equal protection the court in *Montgomery v. Suttles,* 191 Ga. 781, 788 (13 SE2d 781) (1941), stated: "Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution."

Both Doe and Roe were using the highway as a privilege, not as a right, and for the privilege of using the highway the users consent to tests for drugs or alcohol. If

one refuses to take the test, he will lose his driving license; that is, the state revokes his privilege to use the highway. This choice, of agreeing to or rejecting the test, is not extended to the unconscious man, even though he is included in the same statute concerning the same crime. Therefore, under the same or similar circumstances all the people subject to the statute are not treated alike.

Our courts, in dealing with consent, have held over and over again that a person has to be mentally competent to give his binding consent. Black's Law Dictionary defines consent as "[V]oluntary agreement by a person in the possession and exercise of sufficient mentality to make an intelligent choice to do something proposed by another." Therefore, when § 68B-306 (a) and (b) states that any person using the highways of Georgia "shall be deemed to have given consent, *subject* to the provisions of § 68A-902.1, to a chemical test or tests. . .," it means just that. There is no provision in § 68A-902.1 allowing an officer or anyone else to take the blood of anyone conscious or unconscious without his consent. It would logically follow that the only way to get the consent of the unconscious man is to do so when he regains consciousness. So, take the blood, hold it until he is capable of giving his consent, and then ask him if he consents. If he does not, proceed as provided by law, and all parties covered by the statute have been treated equally under the law. To hold as *Smith* did, and the majority in this case, is to deny Williams equal protection and due process of the law and to place an unconstitutional construction upon the statutes, which *Forrester v. Culpepper,* 194 Ga. 748, supra, says we must not do.

I respectfully dissent.

I am authorized to state that Presiding Judge Deen joins in this dissent.