## 54955. THORNBERRY v. THE STATE.

BANKE, Judge.

The appellant was convicted of two counts of homicide by vehicle and sentenced to serve two consecutive one-year sentences. In this appeal, he attacks the state's use of a blood-alcohol test as evidence against him.

The evidence disclosed that, while being pursued by a state patrol car at speeds in excess of 100 mph, the appellant drove his automobile into another vehicle which was attempting to cross the highway, killing two of its occupants and rendering him unconscious. He was taken to a hospital, where a state patrolman ordered that a sample of his blood be extracted for a blood-alcohol test because the odor of alcohol had been detected in his car and on his breath. The result showed that his blood contained .08 percent alcohol.

1. The appellant moved to suppress the result of the

blood test on the grounds that he had not been advised of his right pursuant to Code § 68A-902.1 (a) (3) (4) to have additional tests made by a qualified person of his own choosing. See *Hulsey v. State,* 138 Ga. App. 221 (225 SE2d 752) (1976); *Torley v. State,* 141 Ga. App. 366 (1) (233 SE2d 476) (1977). However, it was clearly shown that the appellant was unconscious during the period when any such advice would have been of any benefit to him. Therefore, the result of the blood test was admissible under Code Ann. § 68A-902.1 (a) (3), which provides in pertinent part: "The justifiable failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer." See *Smith v. State,* 143 Ga. App. 347 (1) (238 SE2d 698) (1977). It was not error to overrule the motion to suppress.

The appellant also argues for the first time on appeal that the extraction of his blood violated his constitutional rights and that it was illegal on certain other grounds as well. However, since these arguments were not raised in the court below, they will not now be considered on appeal. See *Brown v. State,* 115 Ga. App. 813 (1) (b) (156 SE2d 180) (1967); *Pace v. State,* 138 Ga. App. 839 (2) (227 SE2d 436) (1976).

2. It was not error to admit a lab technician's testimony concerning his chemical analysis of the appellant's blood over the objection that he was not properly shown to have been certified by the state crime laboratory to perform such chemical analyses, as required by Code § 68A-902.1 (a) (1). The witness stated that he was in fact so certified and produced what he said was a permit card issued to him by the State Crime Laboratory. In addition, he was shown to have a master's degree in medical technology and to be the manager of lab services at the hospital where the test was performed.

The defense objected to the witness' testimony on the ground that the highest and best evidence of his certification would not be his permit card or his statement that he was certified, but some type of original document from the state crime laboratory containing his certification. It was not error to admit the testimony. See *Helmly v. State,* 142 Ga. App. 577 (236 SE2d 540) (1977).

The appellant's contention that the state failed to show that the chemical analysis was done in a proper manner is waived by his failure to raise the objection at trial. See *Helmly,* supra, at 577.

3. The appellant also objected to the introduction of testimony concerning the blood test results on the ground that the chain of custody for the blood sample had not been properly established. It was not error to overrule the objection. The state's evidence showed that a doctor in the hospital emergency room took the sample from the appellant in the presence of the investigating officer, that it was labeled, sealed, and placed inside a "lock box" in the officer's presence, and that the sample was removed from the box by the lab technician who analyzed it. This was sufficient to establish with "reasonable certainty" that there had been no tampering with or alteration of the evidence. See *Johnson v. State,* 143 Ga. App. 169 (1) (237 SE2d 681) (1977). See also *Pittman v. State,* 110 Ga. App. 625 (1) (139 SE2d 507) (1964); *Meadows v. State,* 135 Ga. App. 758 (219 SE2d 174) (1975); *Campbell v. State,* 136 Ga. App. 338 (3) (221 SE2d 212) (1975).

4. Because the result of the blood test was properly admitted, it was not error to charge that it could be considered as evidence, nor was it error to overrule the motion for new trial as amended.

*Judgment affirmed. Bell, C. J., Quillian, P. J., Webb, McMurray, Shulman and Birdsong, JJ., concur. Deen, P. J., and Smith, J., dissent.*

SUBMITTED JANUARY 3, 1978 — DECIDED JUNE 19, 1978 — REHEARING DENIED JULY 28, 1978 —

*Robert Edward Surles,* for appellant.

*William M. Campbell, District Attorney, Richard Hendrix, Assistant District Attorney,* for appellee.

DEEN, Presiding Judge, dissenting.

I respectfully dissent based substantially on the same reasons outlined and contained in the dissent of Judge Smith and my dissent in *Williams v. State,* 145 Ga.

App. 81 (243 SE2d 614). See also State v. Wood, Okla. Ct. of Crim. App., decided February 21, 1978, where the Oklahoma Court of Criminal Appeals holds "that the implied consent statute is properly construed as meaning that a person driving on the public roads gives his implied consent to a blood test in the event that he is rendered unconscious as a result of an automobile collision, and the police have probable cause to believe that he was driving while intoxicated. However, in order to secure to such a person the same rights guaranteed to other drivers upon Oklahoma's highways, it is necessary that where a person has his blood drawn and tested pursuant to his implied consent he must be given the opportunity, when he regains consciousness, to revoke his consent. In such a case, evidence of the blood test and its result would not be admissible. However, a person revoking his consent after he regains consciousness then becomes liable to suspension of his driver's license pursuant to 47 O.S. Supp. 1975, § 753."

I am authorized to state that Judge Smith joins in this dissent.

SMITH, Judge, dissenting.

This dissent is based upon the same reasons contained in my dissent in *Williams v. State,* 145 Ga. App. 81, 86 (243 SE2d 614) (1978).

Since the *Williams* case, supra, cases from Oklahoma and Alaska have been decided that lend support to the *Williams* dissent. In the case of State v. Wood, 49 O.B.A.J. 333 (Okla. Cr. App., No. 0-77-101, 1978), the Oklahoma court sustained the trial court's order granting a motion to suppress the blood test results of a blood sample taken from an unconscious man.

The facts were as follows. Wood was charged with assault and battery with a dangerous weapon — an automobile — in that he was driving while under the influence of alcohol. He had a collision with another automobile, injuring a person. While the defendant was unconscious, and at the direction of a police officer, a sample of his blood was taken pursuant to the Oklahoma implied consent law. 47 O.S. Supp. 1975, § 751 et seq. The Oklahoma statute is identical to the Georgia statute for

purposes of this case.

The Oklahoma court had this to say about the implied consent statute as applied to the unconscious man:

"We are of the opinion, and so hold, that the implied consent statute is properly construed as meaning that a person driving on the public roads gives his implied consent to a blood test in the event that he is rendered unconscious as a result of an automobile collision, and the police have probable cause to believe that he was driving while intoxicated. *However, in order to secure to such a person the same rights guaranteed to other drivers upon Oklahoma's highways,* it is necessary that where a person has his blood drawn and tested pursuant to his implied consent he must be given the opportunity, when he regains consciousness, to revoke his consent. In such a case, evidence of the blood test and its result would not be admissible. However, a person revoking his consent after he regains consciousness then becomes liable to suspension of his driver's license pursuant to [the implied consent statute]." (Emphasis supplied.)

This is what Presiding Judge Deen and I contend to be the correct interpretation of the Georgia statute. Each person using the highway must be guaranteed the same rights. The majority in both this case and the *Williams* case holds to the contrary.

In this case, Division 1 of the majority opinion would have us interpret Code Ann. § 68A-902.1(a)(3), as applying to unconscious persons. This is erroneous. This Code subsection deals with the situation where the tested person is unable to obtain a qualified independent examiner to give him a blood or urine test. Code Ann. § 68A-902.1(a)(3), supra, is properly understood only when taken in connection with subsections (a)(2) and (a)(4). Subsection (a)(2) states: "When a person shall submit to a blood test at the request of a law enforcement officer . . . only a physician or registered nurse (or other qualified person) may withdraw blood. . ." Then, subsection (a)(3) states, "The *person tested* may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of *his own* choosing administer a chemical test or tests in addition to any administered at

the direction of a law enforcement officer." (Emphasis supplied.) Subsection (a)(3) then concludes with the sentence which the majority depends upon to make the act legal: "The *justifiable* failure or inability to obtain an *additional test* by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer." (Emphasis supplied.)

Subsection (a)(4) states: "Upon the request of the person who shall submit to a chemical test or tests at the request of a law enforcement officer, full information concerning the test or tests shall be made available to him or his attorney. The *arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to this section.*" (Emphasis supplied.)

Subsection (a)(3) deals with the inability of a person to find a qualified person to give him the additional test. If he is unable to locate such a person after a diligent try, not because he is unconscious but because no qualified person is available, *then* the section controls. I simply cannot believe that the majority claims that "justifiable failure" pertains to an unconscious person. The legislature never in its wildest imagination meant for this statute to apply to an unconscious person. How can any fair-minded person who believes in equal protection of the laws stand on such a contention? How can any fair-minded person who believes in equal protection of the laws contend that, because a man is unconscious, his failure to obtain an additional test is "justifiable." Example: "A" and "B" have a wreck in front of a hospital and both are under the influence. "A" is unconscious; "B" is not; and at a police officer's direction, both "A" and "B" have their blood drawn and tested. "B" can and does get an additional test because he is conscious. But "A" cannot because he is unconscious. The legislature never meant for § 68A-902.1(a)(3) to render the results of "A's" blood test forever admissible in any court simply because he failed to obtain an independent test; such a result is unfair to the unconscious blood donor, is oblivious to other applicable rules of law, and is an unconstitutional construction of the statute.

Subsection (a)(4) directs the arresting officer to inform the arrested person of his rights to a chemical test or tests in accordance with this section. This section also states that when a person submits to a blood test at the request of a law enforcement officer, the officer *shall* advise the person arrested of his rights to a chemical test or tests. This court and the Supreme Court of Georgia have held that it is grounds for a new trial for the arresting officer to fail to advise the arrested person as set out in the last sentence of subsection (a)(4). To construe this section as the majority does would mean that an unconscious person could not obtain the results of a test or tests because due to unconsciousness he had not submitted to the test at the request of an arresting officer. Ridiculous, you say, no more so than to construe subsection (a)(3) as meaning unconsciousness is "justifiable failure" or "inability" to obtain an additional test when the law states the arresting officer *must* advise the person arrested of his rights in connection therewith.

The majority contends that this statute is procedural in nature. I prefer to describe it as one directing the law enforcement officer as to how evidence may be obtained. Anything not expressly set out in this statute is not to be supplied by judicial law-making. In the case of Puller v. Municipality of Anchorage, Alaska Sup. Ct. 2-24-78, the court dealt with a person refusing to take a breathalyzer test. It held, that, in view of the fact the implied consent statute did not *expressly* provide that a refusal would be admissible evidence at trial, the refusal could not be used. The court went on to say: "An intrinsic aid to statutory construction is found in the maxim expressio unius est exclusio alterius. The maxim establishes the inference that, where certain things are designated in a statute, 'all omissions should be understood as exclusions.' The maxim is one of long-standing application, and it is essentially an application of common sense and logic." This is true in our two statutes here, §§ 68A-902.1 and 68B-306, supra. There is no provision in either statute that authorizes by implication or otherwise that an officer may take blood from an unconscious man without his consent. In fact the contrary is true as Code Ann. §

68B-306(b) directs that the blood must be drawn as set out in § 68A-902.1. This latter section requires consent. The statute gives no authority to do otherwise.

In my opinion there is also a due process violation involved. Bell v. Burson, 402 U. S. 535 (91 SC 1586, 29 LE2d 90) (1971), is a case in which the U. S. Supreme Court said Georgia's Motor Vehicle Safety Responsibility Act was violative of procedural due process. The portion of the Act the court was dealing with concerned the suspension of an owner's registration plate and driver's license. Suspension would occur when an uninsured motorist involved in an accident did not post security for the amount of damages claimed by an aggrieved party. The statutory scheme did not provide for a pre-suspension determination of fault or responsibility for the accident. The court held that, before the state may deprive an individual of his license and registration, it must provide a procedure for determining the question whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident. On page 539 of the Bell case, supra, the court says, "If the statute barred the issuance of licenses to all motorists who did not carry liability insurance or who did not post security, the statute would not, under our cases, violate the Fourteenth Amendment. [Cits.] It does not follow, however, that the amendment also permits the Georgia statutory scheme where not all motorists, but rather only motorists involved in accidents, are required to post security under penalty of loss of the licenses." The court held "that the failure of the present Georgia scheme to afford the petitioner a prior hearing on liability of the nature we have defined denied him procedural due process in violation of the Fourteenth Amendment."

There is the same problem involved in Georgia's "implied consent" statute. In carrying out the provisions of this statute, two entirely different procedural processes are used. After being advised of his rights under the statute, a conscious individual can refuse to take the breath test. If he consents to the test, he has the additional right to have someone of his own choice test his blood and/or urine. But if an individual is unconscious, an entirely different procedure is used. The officer simply has

a blood sample taken without the person's knowledge or consent, and he is never given any of the choices available to the conscious person. Under the Bell case, supra, this is violative of procedural due process, as well as equal protection of substantive rights.

I am authorized to state that Presiding Judge Deen joins in this dissent.