## ROARK *v.* THE STATE.

1. The judge having stated, in the presence and hearing of the jury, at the time certain testimony was being offered in evidence by the State, the particular purpose for which it was admitted, the fact that he, in his charge to the jury, omitted to again make the same statement in regard to this testimony is not sufficient ground for a new trial.

2. The evidence warranted the charge complained of on the subject of mutual combat between the defendant and the deceased, and there was no error in the charge upon the subject of voluntary manslaughter, or of justifiable homicide, of which the accused can com-

plain. The entire charge fully and fairly presented to the jury the law governing the issues in the case, and there was sufficient evidence to sustain the verdict of guilty.

Argued November 7, 8, — Decided November 18, 1898.

Indictment for murder. Before Judge Felton. Hall superior court. September 13, 1898.

*Estes & Boone* and *C. R. Faulkner,* for plaintiff in error.

*J. M. Terrell, attorney-general, Howard Thompson, solicitor-general,* and *H. H. Dean,* contra.

LEWIS, J. Henry Roark was indicted by the grand jury of Hall county for the murder of Ernest Findley on the 18th of July, 1898. The material portions of the evidence relied upon by the State for a conviction were substantially as follows: On the day of the homicide a party consisting of a few men, a lewd woman from Atlanta, and a girl of doubtful virtue from Gainesville had been made for the purpose of taking a trip from Gainesville to the river in Hall county in the country. In this party was the deceased. Another party, consisting of the defendant and two or three other men, manifested a purpose of also accompanying the other men and the women to the river. The men who were with the women sought to elude the defendant and his crowd, and did not desire their company. This purpose was not successful, and the whole party went to the appointed place in the country, the accused going out in a buggy with the girl Annie Bird, in company with another man. After reaching the point of destination both the accused and the deceased began drinking, and they became somewhat under the influence of intoxicants. The deceased had in his possession a pistol, which he carried openly in his hand most of the time while the parties were assembled at the river, but did not attempt to use it, or make any threats against any one. Both defendant and deceased manifested a purpose of returning home with Annie Bird. They were evidently jealous of each other on account of this woman. The defendant threatened that if the deceased entered a certain house at the place he would hurt or kill him, the defendant being at the time in the house with the woman. He further threatened in the course of the day that he was going to

kill the man who carried Annie to town, it didn't matter who it was. After the first threat against the deceased, he and the defendant apparently made friends. The defendant tried to borrow a pistol from two or three persons, and finally succeeded in procuring one. Annie Bird, who lived in Gainesville, had indicated a purpose to return home with defendant. As the party were getting ready to return home the deceased indicated a purpose to accompany Annie Bird, and the defendant appeared upon the scene with his pistol. Being under the impression that Makenson, who was the main witness for the State, intended to return with Annie, he turned upon him, leveled his pistol at him, used towards him the vilest of epithets, and stated a purpose to kill him, when Annie Bird ran in between the two and pushed aside the defendant's pistol, whereupon the defendant turned on Ernest Findley, the deceased, and remarked, " You bloody son of a bitch, I will kill you," and then shot him. The deceased, at the time, was not attempting to use his pistol, although he had it in his hand, but did not have it lifted or pointed toward the defendant. The effect of the wound was almost immediate death. After the shooting, defendant went to the deceased, and undertook to administer to his wounds and render him some assistance before he died. On the trial it was shown that letters were written by the defendant, after the homicide, to Annie Bird, who was then probably in Atlanta, in effect telling her to aid him on his trial, promising her that if released from the trouble he would marry her, and that his uncle would provide him with ample money, and that they would go off and live happily together. On the contrary, there was evidence in behalf of the defendant that several days before the homicide there had been a difficulty between the defendant and the deceased, resulting in a fight, and that afterwards the deceased threatened to take the life of the defendant. There was also testimony that at one time, just previous to the homicide, the deceased had his pistol presented to the defendant, when he was commanded by the defendant to put it down, which was accordingly done. Annie Bird, the main witness for the defendant, corroborated the State's witness as to an effort to shoot him by the defendant, but further swore that when

the defendant turned upon the deceased, the latter had his pistol up and presented towards the defendant, and that thereupon the defendant shot and killed him.

There is quite a voluminous record of testimony in this case, but the above condensed statement is quite sufficient to a clear understanding of the errors complained of. The defendant was convicted, with recommendation to life imprisonment in the penitentiary. Upon the overruling of his motion for a new trial, he excepted.

1. One assignment of error in the motion for a new trial is that "the court, having admitted in evidence, over the objection of defendant's counsel, the contents of certain letters purporting to have been written by defendant to Annie Bird after the homicide and while he was in jail (the court holding in the presence of this jury that said testimony was admissible only for the purpose of showing the relations existing between defendant and said Annie Bird), erred in not limiting this testimony to the sole purpose for which it was admitted, and in not mentioning it nor referring to it in his charge to the jury, thus leaving the jury to consider it for all purposes." No error is assigned upon the admissibility of this evidence over the objection of defendant's counsel. Even if there had been, the testimony was clearly admissible, proof of the destruction of the original letters having been made. The sole error assigned, however, is that the court did not mention in his charge to the jury the only purpose for which the testimony was admitted. There was nothing whatever in the charge of the court that could possibly have led the jury to infer the testimony could be considered by them for all purposes, and no special request having been made of the judge again to call the jury's attention to what he had already previously said in their hearing, his omission to do so in his charge constituted no ground for a new trial. The evident idea of the court was that the testimony could be considered for the purpose of showing the relations between the parties, with the view of furnishing the jury some data upon which they could pass upon the credibility of the witness, and upon her interest or want of interest in the case. Manifestly the testimony was admissible for this purpose, and we can not conceive for

what other purpose the jury could possibly have considered the evidence to the injury of the accused.

2. Error is assigned in the motion upon the following charge : "If the jury believe that the evidence establishes beyond a reasonable doubt that the defendant and the deceased bore malice to each other, and that there had been mutual threats to kill, against the other, known to each of them, and that each, with the knowledge of the other, had deliberately procured pistols for the purpose of fighting with them, and had thereupon deliberately fought with their pistols, and under those circumstances the defendant, being quicker than the deceased, fired and killed the deceased, the jury would be authorized to find the defendant guilty of the crime of murder." It is admitted by counsel for plaintiff in error that this proposition, as an abstract principle of law, is correct, but it is insisted that the evidence does not warrant the charge; that there was no evidence of a mutual intention to fight, no previous preparation, and no evidence that the parties deliberately fought with their pistols. The brief recital of facts contained above, we think, is a sufficient answer to this contention. From all the facts sworn to in the case, both in behalf of the State and the accused, the jury might with reason have inferred that it was really the purpose of the parties to engage in a deadly struggle whenever the issue was squarely presented as to which one should accompany Annie Bird home; that they had armed themselves for the purpose of this contest, and that at the time when the fatal shooting occurred, each had made up his mind to kill the other. If this determination had been reached, and when the killing occurred the deceased was attempting to use his pistol on the defendant, but was prevented therefrom by the fatal wound he had received, this would constitute a deliberate fighting with their pistols, whether the deceased actually shot or not. We think, therefore, the evidence fully authorized the charge of the court on this subject, and that the law of mutual combat was applicable to the case.

Another assignment of error in the motion is the following charge of the court: "If the jury believe that the evidence establishes beyond a reasonable doubt that the defendant and the deceased had a quarrel with each other about the woman, Annie

Bird, and that the defendant and deceased had pistols in their hands at that time, and that, in consequence of controversy about the woman, there arose at that time great heat of blood between the parties, and the mutual intent to fight, and that both, being in a sudden heat of passion, then and there fought with their pistols, and the defendant, being quicker than the deceased, fired and killed the deceased, the jury would be authorized to find the defendant guilty of the crime of voluntary manslaughter." Exception is taken to this charge on the ground that it assumed that defendant and deceased "fought with their pistols"; counsel for plaintiff in error contending that the evidence nowhere showed that deceased fought with his pistol; and that the charge excluded from the minds of the jury the whole consideration of voluntary manslaughter, except in case the defendant and deceased actually "fought with their pistols." This contention of counsel seems to be based upon the idea that as the deceased did not actually shoot his pistol, he was not engaged in a fight with the pistol. Evidence was introduced in behalf of the defendant himself tending to show that deceased was attempting to use his pistol when he was shot, and manifestly, from his own evidence, if true, there was a fighting between the two with pistols. If two parties should engage in a duel, and one should be killed before he had opportunity of firing, he would no less be a participant in the duel fight. We think the charge given quite as favorable to the defendant as the law allows. It was not objected that the charge was given on the subject of voluntary manslaughter, but that the charge excluded from the jury every other theory of voluntary manslaughter except that specified. We can conceive of no other possible theory, under the facts of the case, upon which the crime of voluntary manslaughter could have been based. In addition to this special charge complained of, the court also gave in charge the law in the code upon the subject of voluntary manslaughter. If there is any question at all about the correctness of this charge, it is whether or not there could have been a correct finding of voluntary manslaughter in the case. If the theory of the State was right, it was murder; if that of the defense was right, it was justifiable homicide. The defend-

ant was convicted of murder, and therefore the charge on the subject of voluntary manslaughter could not possibly have affected his case. There can certainly be no complaint of the charge when it presented the only theory upon which the crime of manslaughter could possibly have been predicated, and when from the argument of counsel it was really contended that if any crime was committed at all, it was of a grade less than murder.

Error is further assigned on the following charge: "If the jury believe that the evidence establishes beyond a reasonable doubt that the defendant shot and killed the deceased, and that the reason for that killing on the part of the defendant was because the deceased was seeking to commit a serious personal injury upon the defendant with a pistol, and that the deceased was the assailant, or, if the jury believe that the defendant was the assailant, that the defendant had really and in good faith endeavored to decline any further struggle before the fatal shot was fired, and that the circumstances were sufficient to excite the fears of the defendant as a reasonable man that his life was in danger or that some great bodily harm would come to him from the assault of the deceased, and under the influence of those fears and not in a spirit of revenge he shot and killed the deceased, that would be a killing in self-defense, and the defendant would be justifiable, and it would be the duty of the jury to acquit the defendant." This is substantially giving in charge to the jury the law of justifiable homicide as embodied in certain sections of the Penal Code. It was not contended that the charge was incorrect as an abstract legal principle, but it is urged that the charge given in the words used by the court was calculated to mislead the jury, and was not applicable to the case, in which there was no evidence that the deceased had assailed or assaulted defendant; the court failing to explain what it takes to make an assault. It was further contended that the charge ignored the theory of the defense that all previous differences between the parties had been bona fide settled, and that upon a certain outbreak of passion upon the part of the deceased, which he manifested by presenting his pistol at defendant for the purpose of shooting him, the defendant shot in

this emergency, not in a spirit of revenge, but in the conscientious belief of saving his own life. As before seen, under one theory of the defense, the deceased was the assailant; and in the absence of any special request of the court to define what is meant by the term, there was certainly no error in not going into details by a definition of the simple words used in the statute. Even if there was no evidence that deceased was the assailant, this would simply make the charge more favorable to the defendant than he was entitled to.

Construing the charge as a whole, we think it fully covered the theory of the defense insisted upon by plaintiff in error. The evidence was amply sufficient to sustain the conclusion of the jury that this theory was not the truth of the case, but that on the contrary the defendant was guilty of the crime charged.

*Judgment affirmed. All the Justices concurring, except Simmons, C. J., and Lumpkin, P. J., absent.*