## 54205. SMITH v. THE STATE.

BIRDSONG, Judge.

Appellant Smith was indicted, tried and convicted of felonious vehicular homicide. He was sentenced to five years, three to serve and two on probation.

The facts leading to the conviction show that Smith was operating his pickup truck on a state highway near Jonesboro. While operating his vehicle, it spun out of control, striking the vehicle operated by the deceased victim at an intersection. The victim was lifeless at the scene and apparently died abruptly as a result of injuries incurred in the accident. Smith received injuries also and was semi-comatose at the scene, not responding to questions. Six empty cans of beer were found in the cab of his truck. Because of his injuries, Smith was transported to a hospital. When the investigating officer arrived at the hospital, he found Smith to be unconscious. The nurse attending stated that while Smith was not unconscious, he was semi-conscious and not communicating with persons present. The investigating officer directed the

nurse to take a blood sample but, because of Smith's condition, was not able to advise him of his right to seek an independent test and analysis of a separate blood sample. The sample removed from Smith tested out at .19 grams of alcohol per cc of blood, or almost twice the amount that presumptively establishes legal intoxication. Appellant Smith raises five enumerations of error, two dealing with the admission of the results of the blood test, two dealing with the admission of the death certificate, and one dealing with a portion of the charge given by the trial judge. *Held:*

1. In his first and fifth enumerations of error, Smith complains of the admission of the blood-alcohol test results. He first contends that the evidence does not show that he was unconscious at the time of the extraction of his blood. We reject this contention. There was evidence that he was unconscious, or at best, that his condition was the same as unconscious, i.e., in a noncommunicative condition. Thus at the time the officer ordered the blood taken, we are satisfied that it was taken in accordance with the provisions of Ga. L. 1975, pp. 1008, 1028 (Code Ann. § 68B-306 (b)). That section provides that any person who is dead, unconscious, or who otherwise is in a condition rendering him incapable of refusal, shall be deemed not to have withdrawn the consent (for a test) provided by paragraph (a) of the same section (implied consent), subject to the provisions of Code Ann. § 68A-902.1 (Ga. L. 1974, pp. 633, 672).

Code Ann. § 68A-902.1 is comprised of ten subparagraphs of which most were either satisfied or are not pertinent hereto. Appellant Smith contends that subparagraph 68A-902.1 (a) (4), which requires the arresting officer at the time of arrest to advise the person arrested of his rights to an independent test, controls the admissibility of the test results. See *Torley v. State,* 141 Ga. App. 366 (233 SE2d 476) (1977). It is Smith's contention that because the officer did not advise him of his right to an independent test, the test results obtained by the state are inadmissible. See *Nelson v. State,* 135 Ga. App. 212 (217 SE2d 450) (1975).

We conclude that the facts of this case render the decisions in the *Nelson* and *Torley* cases, supra,

inapposite and not applicable to this case. It is a well known and accepted fact that following the ingestion of alcohol into the human body, the alcohol is assimilated into the bloodstream, reaching its cumulative peak concentration shortly after ingestion of the latest drink, and thence, without further ingestion, commences to dissipate from the blood at a constant and fairly rapid rate. The police investigator is often faced with the problem of preserving evidence of a crime which he believes upon reasonable grounds to have been committed. The investigator in this case was faced with evidence that an apparent homicide had occurred, the driver of the suspect vehicle either had been drinking or it appeared he had been drinking. Time was passing and the blood-alcohol level, by natural law, was changing. The suspect was either unconscious or unable to communicate with the officer. The officer acted under the authority of the implied consent law to take the blood specimen. Even though he did not advise the appellant of the right to an independent test, we do not believe that invalidated the procedure or rendered the results of the test inadmissible.

Code Ann. § 68B-306 (b) refers to persons dead, unconscious or otherwise incapable of refusing the test, and authorizes the test so long as it does not violate the provisions of Code Ann. § 68A-902.1. This clearly refers only to relevant provisions of § 68A-902.1. Likewise, we conclude that where the evidence shows that such advice cannot be given because of unconsciousness, it was the intent of the General Assembly that, under the exigent circumstances, the officer lawfully can extract a blood specimen under the aegis of protection of evidence.

Nor are we concerned that such an extraction violates any of Smith's constitutional rights against self-incrimination or due process. The Supreme Court of the United States has held that the extraction of a blood sample by normal medical procedures from either an unconscious person or even over the objection of a conscious person does not violate that person's right to silence. Breithaupt v. Abram, 352 U. S. 432 (77 SC 408, 1 LE2d 448) (1957); Schmerber v. California, 384 U. S. 757 (86 SC 1826, 16 LE2d 908) (1966). Our own Supreme Court likewise has held the provisions of §§ 68A-902.1

and 68B-306, supra, constitutional. *Garrett v. Dept. of Public Safety,* 237 Ga. 413 (1) (228 SE2d 812) (1976). We hold, therefore, that the first two enumerations of error are without substantial merit.

2. In his second enumeration of error, Smith urges that the trial judge erred in refusing to charge on proximate causation between the alleged drunken driving and the death of the victim. The court charged on the theory of accident or misfortune and required the jury to determine whether the death was the result of such accident or misfortune or the result of violations of rules of the road by driving recklessly or with ability impaired by alcohol. He fully charged in the language of the statute dealing with vehicular homicide, both as a felony and as a misdemeanor. Finally the charge required that the jury find beyond reasonable doubt that the decedent's death was the product of a violation of the rules of the road as defined or return a verdict of acquittal.

A failure to charge in the exact language requested, where the charge given substantially covered the same principles, is not error. *Pollard v. State,* 236 Ga. 587, 589 (224 SE2d 420) (1976); *Crawford v. State,* 236 Ga. 491, 493 (224 SE2d 365) (1976); *Leutner v. State,* 235 Ga. 77, 81 (218 SE2d 820) (1975). This enumeration lacks merit.

3. Smith contends in Enumerations 3 and 4 that the trial court erred in allowing into evidence the death certificate pertaining to the decedent because it was not prepared in accordance with Chapter 88-17 of the Code Annotated (Ga. L. 1964, p. 499 et seq.) and particularly with § 88-1715 (Ga. L. 1964, pp. 499, 589, as amended), in that it was not filed with the local registrar within 72 hours, nor was the document admitted as evidence in the presence of the jury so that the jury was aware of the limitations placed upon its admissibility by the trial judge (i.e., that it could be considered only as evidence that the person therein named was no longer in life).

These enumerations are without merit. There is no question that the trial court admitted the document as evidence. He stated as much on the record. He further ruled in the presence of the jury that the document was admissible for the limited purpose "of showing that the person named therein is no longer in life." This

constituted a sufficient notification to the jury of the limitations placed upon the document by the trial judge. *Roark v. State,* 105 Ga. 736 (1) (32 SE 125) (1898).

As to the second facet pertaining to the preparation of the document, we are satisfied that the document was prepared by the coroner in accordance with the requirements of Ga. L. 1953, pp. 602, 605; 1960, pp. 1009, 1015; 1961, p. 437 (Code Ann. § 21-205). Under the circumstances of the death, Code § 88-1715 did not govern the preparation of the document. As a coroner's certificate of death, it was admissible into evidence for the purpose for which it was offered. The court did not err in allowing the death certificate into evidence for consideration by the jury.

*Judgment affirmed. Deen, P. J., and Webb, J., concur.*

ARGUED JULY 7, 1977 — DECIDED SEPTEMBER 8, 1977— REHEARING DENIED SEPTEMBER 29, 1977 —

*Windham, Hislip, Goodman & Leathers, Gerrilyn G. Brill, Dan W. Hislip,* for appellant.

*Robert E. Keller, District Attorney, John P. Quinlan, Assistant District Attorney,* for appellee.