A05A1360. THE STATE v. BASS.
(615 SE2d 589)

JOHNSON, Presiding Judge.

The issue in this appeal is whether the trial court properly suppressed evidence of blood test results of a person suspected of

---

driving a motorcycle while under the influence of alcohol. Because the driver was not arrested prior to the state taking and testing his blood, we hold that the trial court correctly ruled that evidence of the test results is inadmissible.

On May 14, 2004, shortly before 9:30 in the evening, Samuel Bass was riding his motorcycle in Fayette County. As he headed south on Westbridge Road, Tracey Paschal was driving west in a Ford Explorer on Westbridge Circle, which ends at Westbridge Road. Paschal stopped at the intersection and then turned left into the southbound lane of Westbridge Road. She drove directly in front of Bass, who collided with the Explorer and was thrown from his motorcycle.

A sheriff's deputy arrived at the accident scene, where emergency medical personnel were already attending to Bass. The deputy did not attempt to speak with Bass, who, at approximately 10:30 p.m., was taken by helicopter to a hospital. The deputy later went to the hospital, but was unable to speak to Bass because he was unconscious. The deputy was told that emergency medical personnel had smelled alcohol on Bass' breath and the deputy also smelled alcohol coming from Bass' breath. The deputy did not place Bass under arrest, but at 11:00 p.m., he did read the implied consent warning to the unconscious man. A few minutes later, a nurse drew blood from Bass' right arm.

On July 29, 2004, the deputy got the results of the blood test back from the crime laboratory. Based on those results, he cited Bass for driving under the influence of alcohol. On August 1, 2004, Bass came to the sheriff's office and was arrested. On October 20, 2004, the state charged Bass by accusation with driving under the influence of alcohol.

Bass subsequently moved to suppress evidence of the blood test results because, among other things, he had not been placed under arrest prior to the deputy's reading of the implied consent warning to him. The trial court granted the motion, and the state appeals.

1. The state argues that because Bass was unconscious, he did not have to be under arrest at the time the implied consent notice was read to him. In support of this contention, the state cites OCGA § 40-5-55 (b), which provides:

> Any person who is dead, unconscious, or otherwise in a condition rendering such person incapable of refusal shall be deemed *not to have withdrawn the consent provided by subsection (a) of this Code section*, and the test or tests may be administered, subject to Code Section 40-6-392.[1]

---

[1] (Emphasis supplied.)

The state is correct that this Code section plainly provides that an unconscious person is deemed not to have withdrawn the implied consent to a blood test that is provided by OCGA § 40-5-55 (a). However, contrary to the state's claims, this "unconscious person" provision of OCGA § 40-5-55 (b) does not wholly eliminate the implied consent requirements of OCGA § 40-5-55 (a). On the contrary, the plain language of subsection (b) expressly cites, and is premised on, the consent provided by subsection (a). Thus, the clear language of the entire Code section dictates that before an unconscious person can be deemed *not* to have withdrawn his implied consent, that implied consent must first exist as provided by subsection (a).

Pursuant to OCGA § 40-5-55 (a), a person who drives a motor vehicle in this state is deemed to have given consent to a chemical test of his blood for the purpose of determining the presence of alcohol or other drugs if he is arrested for any offense arising out of acts alleged to have been committed in violation of OCGA § 40-6-391, which includes driving under the influence of alcohol.[2] Accordingly, "consent is implied only if a person is *arrested* for a violation of OCGA § 40-6-391."[3] Here, Bass was not arrested for any such violation before the blood test was conducted. Rather, he was arrested some two-and-a-half months after his blood was drawn at the hospital.

"[U]nder OCGA § 40-5-55 (a) the implied consent test is only upheld where an arrest has actually been effectuated."[4] Since no arrest of Bass had actually been effectuated prior to the drawing and testing of his blood, the test results are not admissible and the trial court correctly granted Bass' motion to suppress evidence of those results.

We note that the state has also cited the cases of *Rogers v. State*[5] and *Smith v. State*[6] to support its claim that Bass did not have to be under arrest prior to the drawing of his blood. While those cases did involve the taking of blood from drivers who were, or may have been, unconscious, they did not address the issue of whether or not the

---

[2] OCGA § 40-5-55 (a) also provides that consent is implied if a person is involved in a traffic accident resulting in serious injuries or fatalities. But the Supreme Court of Georgia has ruled that this provision is unconstitutional to the extent it authorizes chemical testing regardless of any determination of probable cause. *Cooper v. State*, 277 Ga. 282 (587 SE2d 605) (2003). And in the instant case, the state's enumerated error and argument is based not on this being a "serious injuries" implied consent case, but on the claim that Bass did not have to be under arrest in order for his implied consent to be valid.

[3] *Buchanan v. State*, 264 Ga. App. 148, 150 (1) (589 SE2d 876) (2003).

[4] (Citations omitted.) *Handschuh v. State*, 270 Ga. App. 676, 678 (1) (607 SE2d 899) (2004), writ of certiorari granted, *State v. Handschuh*, 2005 Ga. LEXIS 245 (March 28, 2005).

[5] 163 Ga. App. 641 (295 SE2d 140) (1982).

[6] 143 Ga. App. 347 (238 SE2d 698) (1977).

drivers had been arrested. Rather, those cases stand for the proposition that if a suspect is dead, unconscious or otherwise incapable of refusing a blood test, then an officer can extract blood without advising the suspect of his implied consent rights.[7] Under those cases, we agree that the deputy in the instant case had no obligation to read the implied consent notice to the unconscious Bass. But the fact that the reading of the notice was unnecessary did not also eliminate the requirement that Bass be arrested prior to the taking of his blood.

2. The state claims that the trial court erred in finding that there was no probable cause to arrest Bass because at the time of his arrest on August 1, 2004, there was probable cause to suspect him of driving under the influence of alcohol based on the odor of alcohol on Bass' breath on the night of the accident and based on the blood test results showing a blood alcohol content above the legal limit. The state's claim is disingenuous because the trial court made no finding about probable cause at the time of arrest on August 1, 2004, some two-and-a-half months after the night of the accident. Rather, the court stated at the suppression hearing that there has to be probable cause for an arrest prior to the effectiveness of the implied consent and that there has to be some evidence other than the mere smell of alcohol to establish probable cause.

It is apparent from the transcript of the suppression hearing that the judge was commenting on the absence of probable cause and the lack of an arrest at the time of the incident on May 14, 2004, and was not making a finding on the issue of probable cause at the time of the actual arrest on August 1, 2004. As the state concedes in its brief, the trial court correctly found that the mere odor of alcohol without more did not establish probable cause to arrest Bass on May 14.[8] Moreover, given our holding above in Division 1 that the results of the blood test are inadmissible, the issue of whether or not there was probable cause for the untimely arrest of Bass more than two months after the incident is irrelevant.

*Judgment affirmed. Ruffin, C. J., and Barnes, J., concur.*

DECIDED JUNE 6, 2005.

---

[7] *Rogers*, supra at 643; *Smith*, supra at 349.

[8] See *State v. Gray*, 267 Ga. App. 753, 755 (2) (600 SE2d 626) (2004) (presence of alcohol in driver's body, by itself, does not support inference that driver was impaired); *State v. Batty*, 259 Ga. App. 431, 432 (577 SE2d 98) (2003) (no probable cause where only evidence was odor of alcohol on driver's breath, and driver's errant right turn and alleged following too close).

*Steven L. Harris, Solicitor-General, Joseph B. Myers, Jr., Assistant Solicitor-General,* for appellant.

*George C. Creal, Jr.,* for appellee.