S10A1378. GLENN v. THE STATE.
(704 SE2d 794)

BENHAM, Justice.

Appellant Alton Tywon Glenn was convicted of and sentenced to two consecutive sentences of life imprisonment for malice murder and feticide following the death of Misty Jane Johnson who, when

she was killed, was carrying a 16-week-old fetus.[1] On appeal Glenn challenges the denial of his motion to suppress evidence seized pursuant to ten search warrants, and the denial of his motion to exclude the hearsay testimony of the victim's girlfriend in which she related statements she said the victim made to her.

The victim's body, with her clothing severely burned, was found in a dumpster at a shopping mall in Carrollton, Georgia, at about 4:00 p.m. on December 4, 2001. A plastic bag encased her head and was secured by a rope around her neck. The forensic pathologist who performed the autopsy testified that the victim had suffered several crescent-shaped lacerations on her head that could have been inflicted by a claw hammer found in a search of appellant's apartment. The expert found the victim's cause of death to be asphyxia caused by manual strangulation, with blunt-force trauma to the head a contributing factor. The pathologist determined the fetus found within Ms. Johnson to have a gestational age of four months. A representative of the manufacturer of the rope found around the victim's neck testified that appellant's employer was one of two Georgia companies who had purchased that type of rope from the manufacturer, and appellant's work supervisor testified that appellant had access to the employer's supply of rope. A forensic DNA analyst testified that blood found on the headboard of appellant's bed, on the boots he was wearing when he was arrested, and on a napkin recovered from the trunk of his car matched the DNA profile of the victim. Testing on matter found in the victim's vaginal area matched the DNA profiles of both appellant and the victim.

The victim's roommate and long-time friend testified that the victim had told her that she was involved in a sexual relationship with appellant, that appellant was the father of the child she was carrying,

---

[1] On January 14, 2002, the Carroll County grand jury returned a true bill of indictment against appellant, charging him with aggravated assault (strangulation), aggravated assault (assault with a weapon likely to result in serious bodily injury), malice murder, felony murder (aggravated assault with a weapon likely to cause serious bodily injury), felony murder (aggravated assault by strangulation), rape, and feticide. The trial commenced on April 22, 2002, and concluded on April 25 when appellant was found guilty of all charges except rape. On May 6, 2002, consecutive sentences of life imprisonment were imposed on appellant for the malice murder and feticide convictions; the aggravated assault conviction merged into the murder conviction and the felony murder convictions were vacated by operation of law. A motion for new trial was filed by trial counsel on May 23, 2002; five years later, appellant filed a pro se motion for new trial. This Court accepted trial counsel's petition for voluntary surrender of his license to practice law on January 28, 2008. Appellate counsel was appointed by the trial court to represent appellant on July 2, 2008, and an amended motion for new trial was filed on November 5, 2008, as was an amendment thereto on March 6, 2009. A hearing on the amended motion was held March 13, 2009, at which time the motion was orally denied. The notice of appeal was filed on March 18, 2009, and the written, signed order denying the motion was filed on April 2, 2010. The case was docketed in this Court to the September 2010 term of court.

and that she and appellant were "weighing their options" with regard to terminating the pregnancy, but the victim could not go through with a termination since she had felt the fetus move in utero. The roommate testified that the victim told her she was expecting a phone call from appellant after he finished work at 1:00 a.m. on December 4 and that he was going to drive by and pick her up. The roommate testified that she answered the phone at 1:19 a.m., that she recognized appellant's voice as the caller, and that the victim took the call and left the apartment several minutes later. At 10:00 a.m. on December 4, appellant called the witness and said he had not seen the victim.

1. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty of malice murder and feticide. OCGA §§ 16-5-1 (a); 16-5-80 (b); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Based on a law enforcement officer's affidavit that contained custodial statements made by appellant, a magistrate issued ten search warrants covering appellant's residence, two of appellant's cars, the headboard of his bed on which bloodstains had been seen during the warranted search of appellant's apartment, his body (to obtain blood samples), the clothing he was wearing when he was arrested, his jail cell, his computer, and telephone records.[2] At the hearing on appellant's motion to suppress, the State conceded that appellant's custodial statements should be suppressed and therefore could not be used to establish probable cause to obtain the search warrants. In light of the State's concession, appellant contended that, when his custodial statements were stricken, the affidavit in support of the search warrants lacked probable cause. The trial court denied the motion to suppress, ruling that the information contained in the search warrant application after appellant's statements were excised was sufficient to establish probable cause for the issuance of the warrants. See *Carter v. State*, 283 Ga. 76 (2) (656 SE2d 524) (2008); *Rothfuss v. State*, 160 Ga. App. 863, 864 (288 SE2d 579) (1982) (re-examine affidavit for probable cause after excluding illegally-obtained material).

(a) As it did before the trial court at the hearing on appellant's motion for new trial, the State argues that the trial court did not err in its disposition of the motion to suppress because the motion was insufficient as a matter of law since it made conclusory allegations and did not state any facts. See OCGA § 17-5-30 (b); *Taylor v. State*, 197 Ga. App. 678 (399 SE2d 213) (1990); *Martin v. State*, 195 Ga.

---

[2] Appellant did not challenge the admissibility of evidence gathered pursuant to the three search warrants seeking appellant's telephone records and the search warrant for the clothing worn by appellant at the time of his arrest.

App. 548, 550 (394 SE2d 551) (1990); *Boatright v. State*, 192 Ga. App. 112, 117-118 (385 SE2d 298) (1989) (a motion to suppress that does not state facts but only "a series of conclusions unsupported by statements of fact" does not meet the requirement of OCGA § 17-5-30 (b) that a motion to suppress "shall . . . state facts showing that the search and seizure were unlawful.").

Appellant's motion to suppress claimed the search warrants were invalid because, among other grounds, the affidavit offered in support of the warrant applications lacked sufficient reliability because it contained illegally-obtained evidence[3] and was insufficient to authorize a neutral and detached magistrate to believe a crime had occurred. When a defendant files a motion seeking suppression of items allegedly seized unlawfully, OCGA § 17-5-30 (b) requires the defendant to state in the motion why the search and seizure were unlawful "so as to afford notice of the legal issues which will be before the trial court." *Young v. State*, 282 Ga. 735, 737 (653 SE2d 725) (2007). "[T]he suppression motion must be sufficient to put the State on notice as to the type of search or seizure involved, which witness to bring to the hearing on the motion, and the legal issues to be resolved at that hearing." (Citation and punctuation omitted.) Id. at 736. The motion filed by appellant was sufficient to put the State on notice that all of the searches it had conducted pursuant to a warrant were at issue, that it was necessary to have present at the hearing the affiant detective, and that the legal issue for resolution was the sufficiency of the affidavit. Accordingly, appellant's motion to suppress met the requirements of OCGA § 17-5-30 (b).

(b) As stated earlier, upon the State's concession that appellant's custodial statements could not be considered in determining whether there was probable cause to issue the search warrants, the issue before the trial court was whether the remaining contents of the affidavit supported the issuing magistrate's determination that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Palmer*, 285 Ga. 75, 77 (673 SE2d 237) (2009). In his affidavit, the detective related the discovery of the victim's body and of her pregnancy, and the statements of her friend and roommate concerning the victim's relationship with appellant, her pregnancy and identification of appellant as the father who was not pleased about the pregnancy, the victim's plans that appellant would pick her up the night before her body was found and she would visit with appellant, the victim's

---

[3] This issue was resolved in appellant's favor at the beginning of the hearing on the motion to suppress, when the State conceded that appellant's custodial statements should be suppressed and excised from the affidavits executed in support of the applications for search warrants.

receipt of a phone call from a man the roommate assumed was appellant, the victim's departure from the apartment shortly thereafter, the roommate's past experience of having called appellant's apartment and speaking with the victim, and appellant's repeated phone calls to the roommate the following day in which he denied having been with the victim and having had a physical relationship with her. The application for the search warrant for one of appellant's cars included the fact that the vehicle was registered to appellant at his known address. The applications for search warrants to search appellant's apartment, including his bed's headboard, and the car for which registration information was given in the detective's affidavit contained sufficient information from which the judicial officer could determine there was a "fair probability" that evidence of a crime would be found at those sites as they were likely methods of transporting the victim and the likely destination of appellant and the victim.

(c) Since no evidence gathered in the search of appellant's computer or his jail cell was tendered and admitted against the defendant, even if the trial court erred in denying the motion to suppress with regard to these two search warrants, the error was harmless. *Huff v. State*, 258 Ga. 108 (2) (c) (365 SE2d 430) (1988); *Sultan v. State*, 289 Ga. App. 405 (3) (657 SE2d 311) (2008).

(d) An agent of the Georgia Bureau of Investigation testified that an antifreeze container smelling of gasoline was found in the warranted search of a car registered in appellant's name and located in the yard of the home of appellant's parents. The affidavit executed as part of the application for a warrant to search the car set out the facts surrounding the crime (see Division 2 (b), supra), that the victim's body had been transported from the place where she was killed to the site where her body was found, and that the object of the warrant was one of two vehicles registered to appellant that appellant likely used to move the body. The duty of an appellate court is to determine if there was a substantial basis for concluding that probable cause existed to issue the search warrant. *State v. Palmer*, supra, 285 Ga. at 78. Doubtful cases should be resolved in favor of upholding the determination that issuance of a warrant was proper (*Sullivan v. State*, 284 Ga. 358 (2) (667 SE2d 32) (2008)), reflecting "both a desire to encourage use of the warrant process by police officers and a recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case." *Illinois v. Gates*, 462 U. S. 213, 237, n. 10 (103 SC 2317, 76 LE2d 527) (1983). Employing those standards, we conclude the trial court did not err when it concluded that the reconstituted affidavit supported the issuance of the search warrant.

3. Appellant also takes issue with the trial court's denial of his

motion in limine in which he sought to preclude the State from presenting through the testimony of the victim's friend and roommate the victim's hearsay statement about the paternity of the fetus the victim was carrying when she was killed. The trial court allowed the hearsay statement under the "necessity" exception to the rule against the admission of hearsay. OCGA § 24-3-1 (b).

> In order for hearsay to be admitted under the necessity exception, two requirements must be satisfied: "necessity" and "particularized guarantees of trustworthiness." [Cits.] "Necessity" is demonstrated when the declarant is deceased, when the statement is shown to be relevant to a material fact, and when the statement is more probative of the material fact than other evidence that may be produced and offered. [Cit.] The requirement of "particularized guarantees of trustworthiness" is satisfied when the declaration is coupled with "circumstances which attribute verity to [the declaration]." [Cit.]

*Watson v. State*, 278 Ga. 763 (2) (a) (604 SE2d 804) (2004). Acknowledging that the victim/declarant was not available to testify at trial and that the State presented evidence of the reliability of the hearsay, appellant argues that the hearsay statement regarding the paternity of the fetus the victim was carrying was not "more probative of the material fact than other evidence" since the issue of paternity could have been established by means of a paternity test.[4]

In discussing newspaper reports of the paternity test on the morning of the second day of trial, defense counsel stated that the fact of the test and its result "should be something that's not even made mention of to the jury" because the test result would not be admissible since the State could not comply with the statutory requirement that the result of a scientific test be shared with defense counsel "no later than ten days prior to trial. . . ." OCGA § 17-16-4 (a) (4). Assuming for the sake of argument that it was error to admit the contested hearsay testimony, that error would not constitute

---

[4] According to the transcript of conferences attended by the trial court and the defense and prosecuting attorneys, the GBI Crime Lab conducted the paternity test three weeks before trial and declined to give the prosecuting attorney an oral report of the test result. The prosecuting attorney received the GBI's written report the afternoon of the second day of trial and shared the result with defense counsel immediately. The victim's friend and roommate had given the hearsay testimony at issue prior to the receipt of the test result. Neither the prosecutor nor defense counsel sought to offer the fact of the paternity test or its result at trial, and did not seek the exercise of the trial court's discretion regarding the admissibility of evidence following the failure to comply with statutory discovery requirements. OCGA §§ 17-16-6, 17-16-4 (a) (4).

reversible error. Appellant must establish harm for the error to be reversible (*Stinski v. State*, 286 Ga. 839 (1) (691 SE2d 854) (2010)), and appellant, despite having had an opportunity to shoulder that burden at the hearing on the motion for new trial, failed to do so.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 24, 2011.

*Jason W. Swindle*, for appellant.

*Peter J. Skandalakis, District Attorney, Anne Allen, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christopher R. Johnson, Assistant Attorney General*, for appellee.