# WHOLE COURT

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

July 13, 2016

# In the Court of Appeals of Georgia

A16A0200. BAILEY v. THE STATE.

PHIPPS, Presiding Judge.

Elmer Lamar Bailey was with his cousin when the vehicle they were traveling in crossed the center line of a highway, struck an embankment, and overturned. Bailey, who appeared to be the driver of the vehicle, was trapped in the car and seriously injured. After an ambulance took Bailey to the hospital, an investigating officer found a box containing drugs next to the overturned vehicle. As a result, Bailey was charged with possession of methamphetamine,[1] possession of marijuana,[2] and possession of drug-related objects.[3]

---

[1] OCGA § 16-13-30 (a).

[2] OCGA § 16-13-30 (j) (1).

[3] OCGA § 16-13-32.2.

Bailey was unconscious when a state trooper arrived at the hospital. The state trooper ordered hospital staff to obtain samples of Bailey's blood and urine for drug and alcohol testing. Based on the results of those tests and on the accident itself, Bailey was also charged with DUI (per se),[4] DUI (less safe) (combined influence),[5] and failure to maintain lane.[6] The trial court denied Bailey's motion to suppress the results of the blood and urine tests. After a jury found him guilty of all counts, the trial court entered a judgment of conviction, merging the two DUI counts for purposes of sentencing. The court denied his motion for new trial, and Bailey appeals.

Because Bailey does not raise any issues with respect to his convictions for possession of the drugs and drug-related materials found next to the car or for failure to maintain lane, we do not address those convictions. We reverse the trial court's order denying Bailey's motion to suppress, reverse the DUI (per se) conviction, and vacate the DUI (less safe) guilty verdict based on the United States Supreme Court's

---

[4] OCGA § 40-6-391. According to the indictment, Bailey drove while there was methamphetamine present in his blood and urine.

[5] OCGA § 40-6-391 (a) (4). Specifically, the State charged that Bailey was under the combined influence of amphetamine, methamphetamine, morphine and hydrocodone to the extent it was less safe for him to drive.

[6] OCGA § 40-6-48.

2

opinion in *McNeely v. Missouri*[7] and the Supreme Court of Georgia's decision in *Williams v. State*.[8]

Bailey argues on appeal that the trial court should have suppressed his blood and urine test results because the State did not comply with the implied consent statute and because he was unconscious at the time of testing and unable to give actual consent. We review the trial court's factual findings in a ruling on a motion to suppress for clear error, but we owe no deference to the trial court's application of the law to undisputed facts.[9]

In his motion to suppress, Bailey argued that the seizure of samples of his blood and urine was conducted in the absence of a warrant or an exception to the warrant requirement and in violation of the Fourth Amendment and the Georgia Constitution. At the suppression hearing, the State presented testimony from Deputy Beard of the Franklin County Sheriff's Office, who responded to the scene of the one-car accident, and then-Trooper Roberts of the Georgia State Patrol, who ordered samples taken of Bailey's blood and urine at the hospital.

---

[7] ___ US ___ (133 SCt 1552, 185 LEd2d 696) (2013).

[8] 296 Ga. 817 (771 SE2d 373) (2015).

[9] *State v. Gauthier*, 326 Ga. App. 473, 473-474 (756 SE2d 705) (2014).

3

The trial court denied the motion to suppress, finding that Bailey's bodily fluids were collected as a result of a traffic accident resulting in serious injuries, as defined by OCGA § 40-5-55 (c). The trial court concluded that "in conjunction with a finding of probable cause of the offense of D.U.I. by the investigating officer, [Trooper Roberts] was legally authorized to collect blood and urine from [Bailey] without first placing [Bailey] under arrest per the holding of *Snyder v. State*."[10]

1. Bailey argues that the State did not comply with Georgia's Implied Consent statute because he was not advised of his rights and given an opportunity to refuse testing, as required by the implied consent notice.

OCGA § 40-5-67.1 contains the following language regarding the reading of the implied consent notice:

> At the time a chemical test or tests are requested, the arresting officer *shall* select and read to the person the appropriate implied consent notice from the following: (1) Implied consent notice for suspects under age 21: . . . (2) Implied consent notice for suspects age 21 or over: . . . (3) Implied consent notice for commercial motor vehicle driver suspects: . . . If any such notice is used by a law enforcement officer to advise a person of his or her rights regarding the administration of chemical testing, such person shall be deemed to have been properly advised of

---

[10] 283 Ga. 211 (657 SE2d 834) (2008).

his or her rights . . . . Such notice shall be read in its entirety but need not be read exactly so long as the substance of the notice remains unchanged.[11]

While this statute provides no exception for the reading of the implied consent notice, Section 40-5-67.1 must be construed in conjunction with OCGA § 40-5-55.[12]

Under subsection (a) of OCGA § 40-5-55, "any person who operates a motor vehicle . . . shall be deemed to have given consent . . . to a chemical test or tests of his . . . bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested [for DUI] *or if such person is involved in any traffic accident resulting in serious injuries or fatalities*."[13] Subsection (b) adds that any person who is unconscious shall not be deemed to have withdrawn the consent provided by subsection (a).[14] A "'traffic accident resulting in serious injuries or fatalities' means

---

[11] OCGA § 40-5-67.1 (b) (emphasis supplied).

[12] *Snyder*, supra at 214 (finding the two statutes to be in pari materia, i.e., relating to the same subject matter, and that they thus must be construed together).

[13] OCGA § 40-5-55 (a) (emphasis supplied).

[14] OCGA § 40-5-55 (b).

any motor vehicle accident in which . . . one or more persons suffered a fractured bone . . . or loss of consciousness."[15]

Here, Trooper Roberts had reasonable grounds to believe that Bailey had operated a motor vehicle, and that while doing so Bailey was involved in a traffic accident resulting in serious injuries. Although it is clear only that Bailey was unconscious at the time the samples were taken and not whether he lost consciousness as a result of the accident, evidence introduced at trial[16] showed that Bailey's femur was fractured in the accident. Thus, he is deemed to have given consent to testing under the statute, and he did not withdraw this consent by virtue of being unconscious.[17] Reading OCGA § 40-5-55 (b) with OCGA § 40-5-67.1, we find that Trooper Roberts was not required to give the implied consent notice to the

---

[15] OCGA § 40-5-55 (c).

[16] See *Horne v. State*, 318 Ga. App. 484, 488 (3) (733 SE2d 487) (2012) ("[I]n reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial.") (citation and punctuation omitted).

[17] See OCGA § 40-5-55 (a), (c); *Cooper v. State*, 277 Ga. 282, 285 (II) (587 SE2d 605) (2003).

6

unconscious Bailey.[18] We thus reject Bailey's argument that the State failed to comply with the statute.

2. Bailey also contends that the court must rely on the totality of the circumstances, not just on compliance with the implied consent statute, in showing that there was actual, voluntary consent. Bailey relies on the Georgia Supreme Court's recent decision in *Williams v. State.*[19]

(a) As an initial matter, we reject the State's argument that Bailey waived the actual consent/*Williams* issue by failing to raise it prior to the motion for new trial. The State contends that Bailey argued only that the police did not comply with the implied consent statute and did not argue that the consent was not actual and voluntary.

In *Williams*, the Supreme Court of Georgia held that mere compliance with the statutory implied consent requirements did not equate to actual and voluntary consent so as to be an exception to the constitutional mandate of a warrant.[20] *Williams* was not

---

[18] See *State v. Bass*, 273 Ga. App. 540, 543 (1) (615 SE2d 589) (2005).

[19] Supra.

[20] Id. at 822-823.

decided until March 2015,[21] after Bailey filed his motions to suppress and for new trial but before the new trial hearing. Under the pipeline rule, however, a new rule of criminal procedure will be applied to pending cases, so long as the issue was preserved for appellate review.[22]

"[A]ll motions to suppress should be governed by O.C.G.A. § 17-5-30 . . . to the extent possible."[23] Under that provision, a defendant may move to suppress evidence either because the warrantless search was illegal or, where there was a warrant, on one of three articulated grounds.[24] Either way, "[t]he motion shall be in writing and state facts showing that the search and seizure were unlawful."[25]

Bailey argued in his motion to suppress that the search and seizure of his blood and urine by Trooper Roberts at the hospital were conducted without a warrant or an exception to the warrant requirement and in violation of the Fourth Amendment. At the suppression hearing, he explained further that he was unconscious at the time of

---

[21] See id.

[22] *Taylor v. State*, 262 Ga. 584, 586 (3) (422 SE2d 430) (1992).

[23] *State v. Slaughter*, 252 Ga. 435, 439 (315 SE2d 865) (1984).

[24] OCGA § 17-5-30 (a).

[25] OCGA § 17-5-30 (b).

the search and seizure. "The suppression motion must be sufficient to put the State on notice as to the type of search or seizure involved, which witness to bring to the hearing on the motion, and the legal issues to be resolved at that hearing."[26] The motion filed by Bailey was sufficient to put the State on notice that the seizure of his blood and urine was at issue and that it was necessary to present evidence to justify the warrantless search.[27] Bailey preserved the consent issue and is entitled to rely on *Williams* because his case was in the pipeline when it was decided.[28]

(b) As the trial court noted and as the State argues, we have previously found constitutional the taking of bodily substances from an unconscious suspect. In *Gilliam v. State*,[29] which we decided in 2008, we held that a warrantless search and seizure was constitutional where the investigating officer had probable cause to

---

[26] See *Glenn v. State*, 288 Ga. 462, 465 (2) (a) (704 SE2d 794) (2010) (punctuation and citation omitted) (finding motion sufficiently put State on notice where motion claimed search warrants were invalid because supporting affidavit contained illegally obtained evidence).

[27] See id.

[28] Cf. *McClure v. Kemp*, 285 Ga. 801, 803 (684 SE2d 255) (2009) (pipeline rule did not apply where defendant failed to file motion to suppress and thus did not preserve suppression issue for appellate review).

[29] 295 Ga. App. 358 (671 SE2d 859) (2008).

believe that the defendant had been driving while under the influence due to his unsafe act of failing to yield and the smell of alcohol on his breath.[30] Because the defendant was involved in an accident resulting in serious injuries, we affirmed the denial of his motion to suppress the results of his blood tests, even though his blood was drawn while he was unconscious.[31]

In 2013, however, the United States Supreme Court decided *McNeely*,[32] which held that "while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in *Schmerber [v. California]*,[33] it does not do so categorically."[34] In *McNeely*, a blood sample had been taken from the suspect, despite his refusal to submit to such testing.[35] The Court noted the "advances in the

---

[30] Id. at 359.

[31] Id. See also *Hough v. State*, 279 Ga. 711, 713 (1) (a) (620 SE2d 380) (2005) (requiring the State to show that the investigating officer had probable cause to believe that the suspect was driving under the influence in order to proceed under the serious injuries provision of OCGA § 40-5-55 (a)).

[32] Supra.

[33] 384 US 757 (86 SCt 1826, 16 LE2d 908) (1966).

[34] *McNeely*, supra at 1563 (II) (C) (plurality). Justice Kennedy concurred in Parts I, II-A, II-B, and IV only. Id. at 1568.

[35] Id. at 1556-1557 (I).

47 years since *Schmerber* was decided that allow for the more expeditious processing of warrant applications, particularly in contexts like drunk-driving investigations where the evidence offered to establish probable cause is simple."[36] Where officers can reasonably obtain a warrant without significantly undermining the efficacy of such search, the Fourth Amendment[37] mandates that they do so.[38]

In *Williams*, the Supreme Court of Georgia found that what *McNeely* and post-*McNeely* decisions from other states "seem to indicate is that mere compliance with statutory implied consent requirements does not, per se, equate to actual, and therefore voluntary, consent on the part of the suspect so as to be an exception to the

---

[36] Id. at 1561-1562 (II) (B).

[37] U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.").

[38] *McNeely*, supra at 1561 (II) (B) (majority). See also *Birchfield v. North Dakota*, No. 14-1468, slip op. at 34 (V) (C) (3), 579 US ___ (___ SCt ___, ___ LE2d ___) (decided June 23, 2016) ("Nothing prevents the police from seeking a warrant for a blood test when there is sufficient time to do so in the particular circumstances or from relying on the exigent circumstances exception to the warrant requirement when there is not.").

constitutional mandate of the warrant."[39] The defendant in *Williams* had submitted to

the blood test after the police officer read him the implied consent notice.[40] However,

the Court remanded because, "[i]n considering Williams's motion to suppress, the

state court failed to address whether Williams gave actual consent to the procuring

and testing of his blood, which would require the determination of the voluntariness

of the consent under the totality of the circumstances."[41]

While Georgia appellate courts have not yet addressed whether *Gilliam* is still

good law in light of *McNeely* and *Williams*, courts from other jurisdictions generally

have found that, under *McNeely*, implied consent of an unconscious suspect is

insufficient to satisfy the Fourth Amendment. Those states have concluded that the

State must either obtain a warrant or show exigent circumstances for a warrantless

search under the totality of the circumstances.[42] "The exigent circumstance doctrine

---

[39] *Williams*, supra at 822.

[40] Id.

[41] Id.

[42] *Colorado v. Schaufele*, 325 P3d 1060, Case No. 13SA276, slip op. at *42 (Colo. 2014); *North Carolina v. Romano*, Case No. COA15-940, slip op. at 14-15 (N.C. Ct. App. Apr. 19, 2016); *Pennsylvania v. Myers*, 118 A3d 1122, 1130 (Pa. Super. Ct. 2015); *Tennessee v. Cates*, No. E2014-01322-CCA-R30CD, slip op. at 11-14 (Tenn. Crim. App. 2015); *Texas v. Ruiz*, Case No. 13-13-00507-CR, slip op. at 9-

provides that when probable cause has been established to believe that evidence will be removed or destroyed before a warrant can be obtained, a warrantless search and seizure can be justified."[43]

In a recent decision, *Birchfield v. North Dakota*,[44] the United States Supreme Court concluded that the Fourth Amendment allows breath tests, but not blood draws,

10 (Tex. App. 2015). See also *California v. Arrendondo*, 245 Cal.App.4th 186, 204-206 (Cal. Ct. App. 2016), as modified (finding statutory implied consent could not justify seizure alone but applying good-faith exception to exclusionary rule); *Kansas v. Meitler*, 347 P3d 670 (Kan. Ct. App. 2015) (although implied consent statute was unconstitutional, good-faith exception to exclusionary rule applied); *New Jersey v. Jones*, 96 A3d 297 (N.J. Super. Ct. App. Div. 2014) (reversing denial of motion to suppress where trial court used stricter analysis than the totality of the circumstances test and finding that the accident, serious injuries, and hours-long police investigation justified the warrantless blood sample); *North Dakota v. Morales*, 869 NW2d 417 (N.D. 2015) (finding evidence supported trial court's finding of exigent circumstances where the defendant was driving a motor vehicle involved in a fatal accident late at night on Thanksgiving).

43 *Alvarado v. State*, 271 Ga. App. 714, 715 (1) (610 SE2d 675) (2005).

44 Supra.

under the search-incident-to-arrest exception to the warrant requirement.[45] Although

none of the petitioners in *Birchfield* was unconscious,[46] the Court espoused:

> It is true that a blood test, unlike a breath test, may be administered to a person who is unconscious (perhaps as a result of a crash) or who is unable to do what is needed to take a breath test due to profound intoxication or injuries. But we have no reason to believe that such situations are common in drunk-driving arrests, and when they arise, the police may apply for a warrant if need be.[47]

In *Birchfield*, the Court rejected the alternative argument of implied consent, as the

state statutes at issue went further than imposing civil penalties and evidentiary

consequences on motorists who refused to comply and imposed criminal penalties.[48]

Because one of the petitioners had consented to a blood test after a police officer

---

[45] Id., slip op. at 33 (V) (C) (3). The *Birchfield* Court noted that blood alcohol concentration could also be determined by testing a subject's urine, which also required the test subject's cooperation. Id., slip op. at 6 n. 1. Because none of the cases before the Court involved a urine test, the Court did not reach the issue whether the search-incident-to-arrest exception applied. See id.

[46] Id., slip op. at 13 (III).

[47] Id., slip op. at 35 (V) (C) (3).

[48] Id, slip op. at 36 (VI).

advised him that the law required him to do so, the Court remanded for the state court to reevaluate the voluntariness of his consent under the totality of the circumstances.[49]

We agree with the State that it had probable cause to arrest Bailey for driving under the influence. The record shows that Bailey was involved in a single-car accident, he appeared to have been the driver, and there were no signs of braking before the car hit an embankment and flipped over. The accident took place on a "pretty" day on a clear road. Trooper Roberts had spoken to first responders, who reported that they had smelled the odor of alcohol coming from Bailey. When Trooper Roberts arrived on the scene, Bailey's cousin (the other occupant of the vehicle) admitted that she and Bailey had been "partying all night," and a box found next to the car contained syringes and what appeared to be methamphetamine and marijuana.

The State, however, produced no evidence of exigent circumstances. For example, there was no evidence regarding how long the warrant process was expected to take and whether officers could have been seeking a warrant while Bailey was being transported to the hospital. Thus, this could have been the situation imagined by the *McNeely* Court "in which the warrant process will not significantly increase

---

[49] Id., slip op. at 38 (VII).

the delay before the blood test is conducted because an officer can take steps to secure a warrant while the suspect is being transported to a medical facility by another officer."[50]

In light of *McNeely* and *Williams*, Bailey's implied consent was insufficient to satisfy the Fourth Amendment, and he could not have given actual consent to the search and seizure of his blood and urine, as he was unconscious.[51] To the extent that our decisions in *Gilliam*,[52] *Hill v. State*,[53] and *Rogers v. State*[54] conflict with our Supreme Court's decision in *Williams*[55] and the United States Supreme Court's

---

[50] *McNeely*, supra at 1561.

[51] See *Williams*, supra (requiring finding of actual consent to satisfy the Fourth Amendment). See also *Arredondo*, supra at 194 ("[D]efendant was unconscious at the time of the seizure and thus incapable of manifesting consent voluntarily or otherwise.").

[52] Supra.

[53] 208 Ga. App. 714, 715 (431 SE2d 471) (1993) ("If a suspect is dead, unconscious, or otherwise incapable of refusing the test the officer lawfully can extract a blood specimen under the aegis of protection of evidence without advising the suspect of his rights concerning intoxicant tests.") (citations and punctuation omitted).

[54] 163 Ga. App. 641, 643 (1) (295 SE2d 140) (1982) (interpreting former OCGA § 68A-902.1 (a) (4), which only required the arresting officer to advise the suspect of his right to an independent test).

[55] Supra.

16

decision in *McNeely*[56] on this point, they are disapproved.[57] Because the State failed to demonstrate that exigent circumstances justified the warrantless search, the trial court erred in admitting into evidence the results of Bailey's blood and urine tests.

In the absence of the blood and urine test results, there is no competent evidence that Bailey operated a vehicle with methamphetamine "present in his blood and urine" as charged in the indictment. Thus, we must reverse Bailey's conviction for DUI (per se) based on insufficient evidence.[58] Because we reverse based on insufficient evidence, Bailey may not be retried.[59]

3. We must also vacate the guilty verdict on the DUI (less safe) count because the introduction of the blood and urine test results must be considered harmful. "Error of constitutional dimension is harmless only if it can be determined beyond a

---

[56] Supra.

[57] See *Del Mazo v. Sanchez*, 186 Ga. App. 120, 128 (366 SE2d 333) (1988) ("In the event of a conflict between decisions of this court . . . and the Supreme Court . . . , we are bound to follow decisions of the Supreme Court.") (citing Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI).

[58] See *Cuyuch v. State*, 284 Ga. 290, 295 (3) (667 SE2d 85) (2008) (reversal required when inadmissible evidence is the sole basis for conviction). See also *Epps v. State*, 298 Ga. App. 607, 609 (1) (680 SE2d 636) (2009).

[59] See *Nance v. State*, 274 Ga. 311 (553 SE2d 794) (2001).

reasonable doubt that it did not contribute to the jury's guilty verdict."[60] In this case, we cannot determine beyond a reasonable doubt that the evidence that Bailey's blood and urine test results revealed the presence of marijuana, methamphetamines, and opioids did not contribute to the jury's determination that he was less safe to drive at the time of the accident.[61]

At trial, a witness qualified as an expert in forensic toxicology, testified at length regarding the results of the blood and urine testing and her conclusions therefrom. After detailing the amounts present of each drug, she opined:

> A: [G]enerally when you see . . . the higher level of the parent drug [methamphetamine] and the lower level of the metabolite [amphetamine], you would expect that that person is still experiencing those effects of the parent drug since it suggests a recent dosage. With methamphetamine at higher levels, you can expect that person may be jittery, having some muscle tremors; and in terms of how it affects the central nervous system, . . . your brain and your reaction, you are going to feel a sense of euphoria . . . very good feelings, very high, and a lot of times that euphoria is so strong that it can be distracting to you, especially if you are driving a car . . . . You could be distracted by that

---

[60] *Threatt v. State*, 240 Ga. App. 592, 597 (1) (524 SE2d 276) (1999) (citation omitted) (reversing DUI conviction where evidence was erroneously admitted in violation of the Fourth Amendment).

[61] See *Smith v. State*, 250 Ga. App. 583, 586 (1) (552 SE2d 528) (2001).

18

euphoria which makes it difficult to concentrate on what's going on on the road if someone were to merge in front of you or a pedestrian step out in the way, something like that.

Q: And what, if any, interplay is there between the levels of methamphetamine and the levels of morphine?

A: So when you have conflicting stimulants and depressants in your system, it's similar to the analogy of if you give a drunk person coffee to wake them up. It's that idea of you have two things going on that are giving conflicting signals in your brain at the same time. You can also relate it to if you were driving a car and you had two people yelling different sets of directions at you at the same time. It would be very confusing because your brain wouldn't know which set of signals to listen to since these drugs are giving complete opposite signals.

Given this expert testimony regarding the effect on driving of the particular combination of drugs detected in Bailey's blood and urine, we cannot conclude beyond a reasonable doubt that the erroneously admitted evidence did not contribute to the DUI (less safe) guilty verdict.[62]

4. Without the blood and urine test results, the record is devoid of any evidence that tends to show that Bailey was a less safe driver as a result of being under the

---

[62] Cf. *Bravo v. State*, 304 Ga. App. 243, 249-250 (2) (696 SE2d 79) (finding the improper admission of opinion testimony regarding the defendant's blood alcohol concentration was reversible error because it was highly probable that the evidence contributed to the guilty verdict).

combined influence of amphetamine, methamphetamine, morphine, and hydrocodone, as alleged in the indictment. The other evidence at trial only showed that Bailey had used one of the drugs alleged (methamphetamine). The State thus failed to prove that Bailey was a less safe driver as the result of the combined use of the four named drugs.[63] The indictment did not put Bailey on notice that he could have been convicted of DUI (less safe) based on the use of methamphetamine only or the combined use of methamphetamine and marijuana.[64] Because our decision is based upon insufficient evidence, Bailey may also not be retried on the DUI (less safe) count.[65]

*Judgment reversed in part and vacated in part. Doyle, C.J., Andrews, P.J., Barnes, P.J., Miller, P.J., Ellington, P.J., and Dillard, McFadden, Boggs, Ray, Branch, McMillian, Rickman, Mercier, and Peterson, JJ., concur.*

---

[63] Cf. *Head v. State*, 303 Ga. App. 475, 477 (1) (693 SE2d 845) (2010) (evidence insufficient where there was no evidence that the defendant "was a less safe driver *as a result of* being under the influence of [alprazolam and cocaine]") (punctuation omitted).

[64] *Power v. State*, 231 Ga. 335, 337 (1) (499 SE2d 356) (1988).

[65] See *Nance*, supra.